[Cite as *State v. Hill*, 2011-Ohio-6217.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 09-MA-202 |
| | ) | |
| TARUS HILL, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:    Criminal Appeal from Court of Common
                            Pleas of Mahoning County, Ohio
                            Case No. 06CR1211

JUDGMENT:                   Affirmed

APPEARANCES:
For Plaintiff-Appellee      Paul Gains
                            Prosecutor
                            Ralph M. Rivera
                            Assistant Prosecutor
                            21 W. Boardman St. 6th Floor
                            Youngstown, Ohio 44503

For Defendant-Appellant     Attorney Ronald D. Yarwood
                            42 North Phelps Street
                            Youngstown, Ohio 44503

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: November 30, 2011

DONOFRIO, J.

{¶1} Defendant-appellant, Tarus Hill, appeals from a Mahoning County Common Pleas Court decision finding him guilty of aggravated robbery, following a bench trial.

{¶2} In the early evening of October 22, 2006, Johnna Brandon and her mother, Iona Hayes, left Hayes' apartment, on the corner of Champion Street and Wood Street in Youngstown. They headed for Hayes' vehicle on Champion Street. As they approached the vehicle, they saw a man sitting in the driver's seat. When they got closer to the vehicle, the man jumped out and pointed a gun at them before running away.

{¶3} Brandon and Hayes ran back inside and called the police. Youngstown Police Officer Francis Bigowsky responded. Officer Bigowsky observed that both the back window and steering column of Hayes' vehicle were broken. Brandon and Hayes gave descriptions of the man they saw in the car. Officer Bigowsky broadcasted the description over the radio and checked the immediate surrounding area. He located appellant, who matched the description, near a bar on West Federal Plaza.

{¶4} Appellant was exiting the bar, and upon making eye contact with Officer Bigowsky, he immediately turned around and went back inside. Officers detained appellant while Officer Bigowsky went to get Brandon and Hayes. Upon seeing appellant, both Brandon and Hayes identified him as the man who had been in Hayes' car.

{¶5} A Mahoning County Grand Jury subsequently indicted appellant on one count of aggravated robbery, a first-degree felony in violation of R.C. 2911.01(A)(1)(C), with a firearm specification.

{¶6} The matter proceeded to a bench trial where the court found appellant guilty as charged. The court then sentenced appellant to three years on the aggravated robbery and three years on the firearm specification to be served prior to and consecutive to the three years on the aggravated robbery for a total sentence of six years.

{¶7} This court granted appellant leave to file a delayed appeal.

{¶8} Appellant raises three assignments of error, the first of which states:

{¶9} "MR. HILL WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND HIS RIGHTS UNDER THE OHIO CONSTITUTION."

{¶10} Appellant argues here that his counsel was ineffective. His main contention is that counsel should have filed a motion to suppress the show-up identifications by Brandon and Hayes. He contends that the show-ups were impermissibly suggestive and constituted the only evidence against him. Appellant also raises other "concerns" of ineffective assistance, which under the doctrine of cumulative error and combined with the failure to file a motion to suppress, he contends rise to the level of ineffectiveness. These include failing to object to the identification of appellant at the preliminary hearing, calling appellant as a witness at the preliminary hearing, failing to move for separation of witnesses at the preliminary hearing, allowing appellant to submit to a polygraph test, waiving a jury trial, and failing to move for acquittal.

{¶11} To prove an allegation of ineffective assistance of counsel, the appellant must satisfy a two-prong test. First, the appellant must establish that counsel's performance has fallen below an objective standard of reasonable representation. *Strickland v. Washington* (1984), 466 U.S. 668, 687; *State v. Bradley* (1989), 42 Ohio St.3d 136, at paragraph two of the syllabus. Second, the appellant must demonstrate that he was prejudiced by counsel's performance. Id. To show that he has been prejudiced by counsel's deficient performance, the appellant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley*, 42 Ohio St.3d at paragraph three of the syllabus.

{¶12} The appellant bears the burden of proof on the issue of counsel's effectiveness. *State v. Calhoun* (1999), 86 Ohio St.3d 279, 289. In Ohio, a licensed attorney is presumed competent. Id.

{¶13} Appellant contends that his counsel failed him by not filing a motion to suppress the show-up identifications made by Brandon and Hayes.

{¶14} Counsel's failure to file a motion to suppress does not necessarily constitute ineffective assistance of counsel. *State v. Madrigal* (2000), 87 Ohio St.3d 378, 389. However, the failure to file a motion to suppress may constitute ineffective assistance of counsel when the record demonstrates that the motion would have been granted. *State v. Conkright*, 6th Dist. No. L-06-1107, 2007-Ohio-5313, at ¶50. Thus, we must look at whether a motion to suppress, if filed, would have been granted.

{¶15} When determining whether an out-of-court identification is admissible, a trial court uses a two-step approach. *Neil v. Biggers* (1972), 409 U.S. 188, 196-200. The court first determines whether the identification procedure was impermissibly suggestive. Id. at 196-97. Then, if the procedure was impermissibly suggestive, the court must determine if the identification was reliable despite being suggestive. Id. at 199. In determining whether the identification was reliable, the court should consider (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the witness's level of certainty at the confrontation, and (5) the length of time between the crime and the confrontation. Id.

{¶16} A "show up" is an identification procedure where the victim, shortly after the incident, is shown only one person and is asked whether the victim can identify the perpetrator of the crime. *State v. Tanksley*, 10 Dist. No. 07AP-262, 2007-Ohio-6596, at ¶9. While this one-man show-up identification procedure is inherently suggestive, a witness's identification from such a show up is admissible if the identification is reliable. *State v. Sutton*, 10th Dist. No. 06AP-708, 2007-Ohio-3792, at ¶38.

{¶17} Because the identification procedure here was a one-man show up, it was inherently suggestive. When Brandon and Hayes arrived, appellant was standing with several police officers. This procedure suggested that he was the perpetrator. But simply because the show up was suggestive does not mean that the identifications were unreliable.

{¶18} The other facts surrounding the identifications of appellant weigh in favor of their reliability.

{¶19} As to the first two factors, when the women first saw appellant, he was sitting in Hayes's car. (Tr. 13, 33). He then jumped out and pointed a gun at them before running away. (Tr. 13-14, 33-34). It was dark outside when the incident occurred. (Tr. 20). Hayes stated that she got a good look at appellant's face. (Tr. 34). Brandon stated that she only saw some of his face. (Tr. 27).

{¶20} As to the third factor, Brandon described the perpetrator as wearing a blue or black, puffy, bubble, reversible coat and dark-colored pants. (Tr. 14-15). She also stated that the coat had a red lining. (Tr. 23). Hayes described the man's pants as green. (Tr. 34). She also stated that he had on a heavy, black, reversible coat with red inside. (Tr. 34-35). Appellant was wearing clothes that matched these descriptions when Officer Bigowsky stopped him. (Tr. 91). The women further described the man as a dark-skinned black male in his early thirties, about six feet tall, and 150 pounds. (Tr. 82). Appellant testified that at the time of the incident he was five-foot-seven to five-foot-eight, and weighed 135 to 140 pounds. (Tr. 119). He also stated that he was 28 years old at the time. (Tr. 119). Thus, while the women's description of appellant's height was off by four inches, their descriptions were fairly accurate as to his weight and age. Thus, overall the women's descriptions were reasonably accurate.

{¶21} As to the fourth factor, both women were certain at the show up that appellant was the man they had encountered earlier. (Tr. 17-19, 39). Hayes testified that she "immediately" recognized appellant upon seeing him in the show up. (Tr. 39). She stated that she recognized him both by his face and by his clothes. (Tr. 40). Officer Bigowsky remembered that both women identified appellant but could not recall if their identifications were immediate or not upon seeing appellant. (Tr. 89-90). Appellant testified that Hayes did not immediately identify him. (Tr. 117-18).

{¶22} As to the final factor, Hayes stated that it was approximately 45 minutes to one hour from the time she first saw appellant in her car until the time she identified him at the show up. (Tr. 40). Officer Bigowsky stated that the entire

process took about one hour and 15 minutes from when he first responded to Hayes's apartment. (Tr. 83-84). Thus, only a short period of time elapsed from when the women first saw the perpetrator until they identified appellant.

**{¶23}** Considering the *Biggers* factors leads us to the conclusion that the show up was in fact reliable. Both women gave fairly accurate descriptions of appellant. Their opportunity to observe the perpetrator was brief, but they were in close proximity to him. The elapsed time between when the incident occurred and the show up was at most one hour and 15 minutes. And both women stated they were certain that appellant was the man they had seen earlier with a gun. Given the reliability of the show up, a motion to suppress the identifications would not have been granted. As such, we cannot find that counsel was ineffective for failing to file a motion to suppress.

**{¶24}** And because counsel was not ineffective for failing to file a motion to suppress, this failure cannot be considered an error for a cumulative error analysis.

**{¶25}** An appellate court may reverse a defendant's conviction based on the doctrine of cumulative error. Cumulative error occurs when errors deemed separately harmless deny the defendant a fair trial. *State v. DeMarco* (1987), 31 Ohio St.3d 191, at paragraph two of the syllabus.

**{¶26}** The other alleged "concerns" appellant complains constitute cumulative error, are not errors. Allowing appellant to submit to a polygraph test and electing a bench trial over a jury trial were strategic decisions for counsel to make. We will not second guess trial counsel's strategic decisions. On review, this court will not second-guess strategic decisions of trial counsel. *State v. Carter* (1995), 72 Ohio St.3d 545, 558. And though counsel initially forgot to move for acquittal, after the court reminded him, counsel did make such a motion. (Tr. 97). Thus, appellant suffered no prejudice in that regard. Finally, as to the alleged errors at the preliminary hearing, appellant has made no assertion as to how they affected the outcome of his trial. Thus, we cannot find cumulative error in this case.

**{¶27}** Accordingly, appellant's first assignment of error is without merit.

{¶28} Appellant's second and third assignments of error share a common factual basis and, therefore, we will address them together. They state:

{¶29} "THE CONVICTION OF APPELLANT IS BASED ON INSUFFICIENT EVIDENCE IN VIOLATION OF APPELLANT'S DUE PROCESS RIGHTS UNDER BOTH THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND OHIO CONSTITUTION."

{¶30} "APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND HE WAS DENIED DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND OHIO CONSTITUTION."

{¶31} Appellant argues here that his conviction is not based on sufficient evidence and is against the manifest weight of the evidence. He asserts that the only evidence linking him to the crime was the victims' testimony, which stemmed from an impermissibly suggestive identification and the results of a polygraph examination. In contrast, he points out that he testified that he had no criminal record and did not commit this crime. Additionally, he points out that the police did not find him in possession of a firearm.

{¶32} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith* (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

{¶33} The court convicted appellant of aggravated robbery in violation of R.C. 2911.01(A)(1), which provides:

{¶34} "(A) No person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall do any of the following:

**{¶35}** "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

**{¶36}** The evidence at trial was as follows.

**{¶37}** Brandon testified first. She stated that on the evening in question, she was with Hayes at her apartment and the two went out to the street to go to Hayes's car. (Tr. 10-11). As they approached the car, they saw a man sitting inside of it. (Tr. 13). The man jumped from the car and pointed a black gun at them. (Tr. 13-14). Brandon stated that the man pointed the gun at them before fleeing from the scene. (Tr. 14). She described the man as wearing a blue or black bubble coat with dark pants. (Tr. 14). Brandon stated that she and Hayes went back to Hayes's apartment and called the police. (Tr. 15).

**{¶38}** Brandon went on to testify that shortly after the officer left Hayes's apartment, he came back and said they had a person for Hayes and Brandon to observe to see if he was the man who held a gun on them. (Tr. 17). She stated that Officer Bigowsky drove them to the show up where she identified appellant. (Tr. 17-18). Brandon also identified appellant in court. (Tr. 18).

**{¶39}** On cross-examination, Brandon stated that it was dark when the incident occurred and that she only saw some of his face. (Tr. 20, 27).

**{¶40}** Hayes testified next. She too testified that when she and Brandon went out to her car, they saw a man sitting in it who then jumped out of the car and pointed a black gun at them. (Tr. 33-34). Hayes stated that the man threatened to shoot them if they moved. (Tr. 34). She stated that she got a good look at the man's face. (Tr. 34). Hayes described the man as wearing green pants and a heavy, reversible, black coat with red inside. (Tr. 34-35). Hayes then identified appellant in court as the man who jumped out of her car and pointed a gun at her. (Tr. 35-36). She also testified that she identified appellant that night where she "immediately" recognized him at the show up. (Tr. 39). Hayes recognized both appellant's face and his clothes. (Tr. 40).

{¶41} Additionally, Hayes testified that as a result of the incident, one of her car windows was broken out and the steering column was damaged as if appellant was trying to steal her car. (Tr. 41-42).

{¶42} Michael LoPresti is a polygraph examiner with the Bureau of Criminal Identification and Investigation who examined appellant. He stated that the polygraph test has an accuracy rate of 93 to 96 percent. (Tr. 68). He also stated that the first test he administered to appellant was inconclusive, so he administered a second test. (Tr. 71).

{¶43} LoPresti asked appellant four relevant questions: (1) "Did you get into a car that was parked on North Champion Street?" (2) "Did you point a gun at Iona Hayes on North Champion Street?" (3) "Did you make any threats to Iona Hayes as she walked on North Champion Street?" and (4) "Were you ever in Iona Hayes' car when it was parked on North Champion Street?" (Tr. 63). LoPresti found that appellant reacted deceptively to three out of the four relevant questions. (Tr. 63-64). He concluded in his report: "Specific reactions indicative of deception appeared on the subject's charts as a result of the relevant questions asked during the examination. It is to be considered, therefore, that this person did not tell the truth during the test." (Tr. 65). LoPresti further testified that he got a second opinion from another polygraph examiner who also reached the same conclusion. (Tr. 66-67).

{¶44} Officer Bigowsky was the state's final witness. He stated that on the night in question he responded to a call that a car had been broken into at Hayes's apartment. (Tr. 81). He stated that Hayes and Brandon described the person who broke into Hayes's car as a dark-skinned male in his early thirties, about six feet tall, and 150 pounds wearing a black baseball cap, dark-colored jacket, and brown pants. (Tr. 82). They also reported to him that the man had a small black handgun. (Tr. 83). Officer Bigowsky inspected Hayes's car and found a broken passenger-side window and a peeled steering column. (Tr. 83). Officer Bigowsky broadcasted the women's description over the radio and began looking for the suspect. (Tr. 83-84).

{¶45} Officer Bigowsky spotted appellant, who matched the suspect's description, in front of a bar on West Federal Plaza. (Tr. 84). He stated that when he

saw appellant, appellant looked at him, made eye contact, and then immediately turned around and walked back into the bar. (Tr. 86). Officer Bigowsky then went into the bar and stopped appellant. (Tr. 87-88). Appellant told Officer Bigowsky that he had come from BW3's. (Tr. 88). Other officers detained appellant while Officer Bigowsky picked up Brandon and Hayes. (Tr. 89). He testified that both Brandon and Hayes identified appellant as the person who robbed them. (Tr. 90). Officer Bigowsky further testified that he did not find a gun. (Tr. 90).

{¶46} This evidence was sufficient to support appellant's conviction. Brandon and Hayes testified that they saw a man inside Hayes's car. A car window was broken and the steering column was peeled. The man jumped from the car and, after pointing a gun at them, fled. This evidence demonstrated that a man was attempting to steal Hayes's car and fled after doing so. It also established that the man had a deadly weapon, which he displayed to the women. The only question at trial was whether appellant was the perpetrator. As discussed at length in appellant's first assignment of error, both women reliably identified appellant as the perpetrator. They also identified him again during the trial. Thus, the state presented evidence going to all of the elements of aggravated robbery. Appellant's conviction was supported by the sufficiency of the evidence.

{¶47} Next, we must move on to determine if his conviction was supported by the manifest weight of the evidence.

{¶48} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387. "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.

**{¶49}** A reviewing court will not reverse a judgment as being against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *State v. Eskridge* (1988), 38 Ohio St.3d 56, 59. Unlike a manifest weight challenge to a conviction resulting from a jury verdict, which requires a unanimous concurrence of all three appellate judges to reverse, a manifest weight challenge to a conviction resulting from a bench trial requires only a majority concurrence to reverse. *Struthers v. Williams*, 7th Dist. No. 07-MA-55, 2008-Ohio-6637, at ¶10.

**{¶50}** In addition to the above discussed evidence, we must also consider appellant's testimony in our manifest weight analysis.

**{¶51}** Appellant testified that he did not commit this crime. (Tr. 104). He testified that on the day in question, he arrived at BW3's around 5:30 p.m. to watch some football games. (Tr. 108). He stated that he left between 8:00 and 8:30 to go to Barley's after having two beers. (Tr. 101, 108). Upon arriving at Barley's, the bartender said he could not watch TV without ordering a drink, at which time he got up to exit the bar and encountered Officer Bigowsky. (Tr. 101). Appellant testified that he does not have a driver's license, he does not know how to drive, and he does not own a gun. (Tr. 103, 107). Furthermore, appellant, a resident of Youngstown, testified that he did not know where the apartments are on Champion and Wood Street. (Tr. 109). Nor did he know where the streets were located. (Tr. 109). Yet, he did not drive, he did not take the bus, and he walked every day. (Tr. 110). Appellant also testified that he had a drinking problem. (Tr. 112).

**{¶52}** This case turned on the victims' identifications of appellant. They described appellant's clothes and physical characteristics. Officer Bigowsky located appellant soon after the crime was committed. Appellant was wearing clothes that matched the victims' descriptions and his physical attributes were also similar to the victims' descriptions. Furthermore, appellant's polygraph test indicated that he was being deceptive when he was asked about the crime. Thus, the polygraph results further bolster the victims' identification.

{¶53} As to appellant's testimony that he did not commit the crime, this was a matter of credibility. The trial court was in the best position to judge his credibility. Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, great deference must be given to the fact finder's determination of witnesses' credibility. *State v. Wright*, 10th Dist. No. 03AP-470, 2004-Ohio-677, at ¶11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Id.

{¶54} Finally, while appellant contends that the gun was never recovered, this was not necessary since both Brandon and Hayes testified that they saw appellant point a gun at them.

{¶55} Thus, appellant's conviction was not against the manifest weight of the evidence.

{¶56} Accordingly, appellant's second and third assignments of error are without merit.

{¶57} For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., concurs.

DeGenaro, J. concurs.