[Cite as *State v. Simmons*, 2013-Ohio-2890.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 13CA4 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| ZACHARY A. SIMMONS, | : | |
| | : | **RELEASED 6/26/13** |
| | | |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Carol Ann Curren, Greenfield, Ohio, for appellant.

Fred J. Beery, Esq., Hillsboro City Law Director, Hillsboro, Ohio, for appellee.
_____
Harsha, J.

{¶1}   Following a bench trial, the Hillsboro Municipal Court convicted Zachary Simmons of assault.  Simmons contends his conviction is against the manifest weight of the evidence because the victim gave inconsistent testimony on certain issues, and his version of events is more believable.  However, we leave credibility determinations to the trier of fact.  And because the court could reasonably return a guilty verdict based on the State's version of events, we cannot say the court clearly lost its way and created such a manifest miscarriage of justice that we must reverse the judgment below.

{¶2}   Simmons also argues that trial counsel rendered ineffective assistance when she told the court she was ready to proceed with the trial.  After making this statement, counsel reminded the court of her motion to withdraw and said she could not subpoena witnesses on Simmons' behalf because he did not contact her until two days before trial.  Simmons suggests counsel should have requested a continuance to issue

subpoenas.  However, to the extent counsel may have been unprepared despite her affirmative statement to the contrary, Simmons invited that predicament by failing to timely contact her.  Moreover, the court implicitly denied a continuance when it denied counsel's motion to withdraw.  Counsel did not have to make a futile explicit request.  And even if counsel were somehow deficient for not explicitly requesting a continuance to subpoena witnesses, Simmons cannot demonstrate prejudice.  He only speculates that other witnesses might have corroborated his version of events.  Accordingly, we affirm the judgment below.

## I.  Facts

{¶3}    Simmons was charged with one count of assault under R.C. 2903.13(A), a first-degree misdemeanor.  He pleaded not guilty and a bench trial ensued.

{¶4}    Trenton Sams testified that on July 21, 2012, he was cleaning his garage when his cousin, Simmons, and Simmons' brother came over.  At one point, Sams told them it was getting late, and they needed to leave.  His cousin and Simmons' brother left, but Simmons refused to leave.  Sams walked toward Simmons and told him again to leave, and Simmons punched him in the face six or seven times.  Sams thought that at one point when he was on the ground, Simmons also kicked him in the face.  Sams testified that he had "major bruising" from the incident.  He had his girlfriend take pictures of his face 15 or 16 minutes after the altercation.  The photos depict a bloody nose and numerous areas with blood/abrasions on Sams' face.  Sams went to the hospital about an hour and a half after the fight.  The State introduced his medical bills into evidence.

{¶5}    On cross-examination, Sams admitted that in a written statement, he told

police he invited friends over for a karaoke party, and after his guests got drunk, he told them he was shutting the party down.  Sams testified that he did not drink at the party but could not recall who was drinking.  He admitted that he sang karaoke but claimed it was after he finished cleaning the garage.

{¶6}    Simmons testified that he went to Sams' garage for a karaoke party and that several people were present in addition to the ones Sams testified about.  Simmons claimed he previously heard stories that Sams would get drunk at parties, "turn into a pervert," and "try to grab ahold of the younger boys and all."  Sams got drunk that night and tried to get him to sleep with Sams' wife, but Simmons declined.  Simmons saw Sams grab the crotch of Sams' male cousin twice.  Later, Simmons followed Sams to a next-door neighbor's basement, where Sams pulled the shorts off of Simmons' 17 year old brother.  Simmons and Sams had a verbal dispute during which Simmons threatened to "send [Sams] to jail."  Sams went outside, and Simmons followed him to the garage.  As Simmons got his phone and charger from the garage, Sams started to shut down the party.  When Sams saw Simmons, he yelled at Simmons to get off his property.  Simmons walked to the next-door neighbor's property, calling Sams names as he went.  Sams ran up behind him and tackled him to the ground.  They wrestled, and Simmons got on top and "cold cocked" Sams "right in the mouth."  The altercation "went on for a while."  Others witnessed the event and evidently helped Simmons get Sams under control.

{¶7}    During his rebuttal testimony, Sams denied engaging in any lewd acts that night.  He also remembered that his neighbor was at the gathering that night but left before the assault.

{¶8}    The court found Simmons guilty of the charged offense and sentenced him.  This appeal followed.

## II.  Assignments of Error

{¶9}    Simmons assigns the following errors for our review:

1. THE FINDING OF GUILTY WAS AGAISNT [sic] THE MANIFEST WEIGHT OF THE EVIDENCE.

2. DEFENDANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL WHEN DEFENSE COUNSEL STATED SHE WAS READY TO PROCEED WITH TRIAL.

## III.  Manifest Weight of the Evidence

{¶10}  In the first assigned error, Simmons contends his conviction is against the manifest weight of the evidence.  To evaluate this claim, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed."  *State v. Brown*, 4th Dist. No. 09CA3, 2009-Ohio-5390, ¶ 24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).  We "may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt."  *State v. Johnson*, 58 Ohio St.3d 40, 42, 567 N.E.2d 266 (1991).

{¶11}  We must remember the weight to be given evidence and credibility to be afforded testimony are issues for the trier of fact.  *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d 1000 (1995).  The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony."  *Seasons Coal Co. v. City of*

*Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).  We will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice.  "Unlike a manifest weight challenge to a conviction resulting from a jury verdict, which requires a unanimous concurrence of all three appellate judges to reverse, a manifest weight challenge to a conviction resulting from a bench trial requires only a majority concurrence to reverse."  *State v. Hill*, 7th Dist. No. 09-MA-202, 2011-Ohio-6217, ¶ 49.

**{¶12}**  Simmons was charged with assault in violation of R.C. 2903.13(A), which provides:  "No person shall knowingly cause or attempt to cause physical harm to another * * *."

**{¶13}**  Implicitly, Simmons concedes that the victim's testimony, if believed, supports his conviction.  But Simmons claims the victim lacks credibility for various reasons.  Simmons argues that Sams initially testified that he was cleaning his garage on the night in question.  But when confronted with his written statement to police, Sams admitted he invited people over for a karaoke party.  Simmons also points to the fact that Sams testified three people came to the garage but later admitted that a fourth came over.  Even though the group was small, Sams could not remember who was drunk.  Simmons also argues that Sams is not credible because he tried to withdraw his complaint at one point.  And Simmons claims that Sams' "instructions to his girlfriend were to take pictures not to take him to the ER."  (Appellant's Br. 4-5).

**{¶14}**  Simmons contends his version of the events is more believable than the State's version.  He argues that it makes no sense for him to go to a stranger's house while that person is cleaning his garage, get drunk, and assault him when asked to leave.  He claims that it does make sense that Sams would attack him first if both men

had been drinking, they had a verbal altercation, and Simmons later called Sams

names.  But as we explained in *State v. Murphy*, 4th Dist. No. 07CA2953, 2008-Ohio-

1744, ¶ 31:

> It is the trier of fact's role to determine what evidence is the most credible
> and convincing.  The fact finder is charged with the duty of choosing
> between two competing versions of events, both of which are plausible
> and have some factual support.  Our role is simply to insure the decision is
> based upon reason and fact.  We do not second guess a decision that has
> some basis in these two factors, even if we might see matters differently.

And as trier of fact, the trial court was free to believe all, part, or none of the testimony

of each witness.  *State ex rel. DeWine v. Ashworth*, 4th Dist. No. 11CA16, 2012-Ohio-

5632, ¶ 71.

{¶15}  Here, the court chose to believe the State's version of events, and we will

not substitute our judgment for that of the fact finder under these circumstances.  The

evidence reasonably supports the conclusion that Simmons knowingly caused physical

harm to Sams.  The court was free to believe the victim's claim that Simmons was the

aggressor and repeatedly punched Sams in the face, causing injuries.  The

photographs of the injuries and medical bills add credence to Sams' version of events.

{¶16}  While it may have been prudent for Sams to seek medical treatment

before having his girlfriend photograph his injuries, that decision does not make Sams

so incredible that the court lost its way in believing his testimony about the assault.

Even though Sams gave inconsistent stories about what he was doing in the garage

and the number of people present, and even though he could not recall who at the small

party was drunk, he never wavered in his claim that Simmons attacked him first.

Moreover, contrary to Simmons' claim, neither party presented evidence at trial that

Sams ever tried to withdraw his complaint let alone why.

{¶17} In his argument for this assigned error, Simmons also states: "Although the Sheriff's report states that pictures were taken, it is not clear whether this refers to the pictures Sams had taken or the R/O took." (Appellant's Br. 5). We do not see the relevance of this statement to the manifest weight argument. Neither party even introduced a Sheriff's report as evidence.

{¶18} Simmons also states: "It appears that the Court was not well inclined toward [him] to begin with as it stated before trial that he had 'several opportunities in this court over the years' and also that [he] was a criminal justice major at UC. * * * It is possible from the colloquy that the Court was from the outset, although certainly unintentionally, disinclined to give much credence or leeway to [him]." (Appellant's Br. 5). In his reply brief, Simmons clarifies that he is not accusing the court of being biased or prejudiced against him. Therefore, we fail to see the purpose of Simmons' statements about the court possibly being "unintentionally, disinclined" to credit his testimony.

{¶19} In sum, after reviewing the entire record, we cannot say that the trial court lost its way or created a manifest miscarriage of justice when it found Simmons guilty of assault. Accordingly, we overrule the first assignment of error.

IV. Ineffective Assistance of Counsel

{¶20} In his second assignment of error, Simmons contends his trial counsel rendered ineffective assistance. To prevail on an ineffective assistance of counsel claim, the appellant must show: 1.) counsel's performance was deficient, and 2.) the deficient performance prejudiced his defense so as to deprive him of a fair trial. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To establish deficient performance, an appellant must show that counsel's performance fell below an objective level of reasonable representation. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. To establish prejudice, an appellant must show a reasonable probability exists that, but for the alleged errors, the result of the proceeding would have been different. *Id.* The appellant bears the burden of proof because a properly licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62.

**{¶21}** Simmons argues counsel provided ineffective assistance when she told the court she was ready to proceed with trial. He claims counsel was not ready, as demonstrated by her subsequent statement to the court that she had not had an opportunity to subpoena witnesses. He contends that if counsel had requested a continuance to subpoena witnesses and those witnesses corroborated his story, there is a reasonable probability the outcome of the trial would have been different.

**{¶22}** On October 19, 2012, Simmons signed a form waiving his right to appointed counsel. Evidently he had a change of heart that same day because he filed an affidavit of indigency and the court appointed counsel for him. On November 9, 2012, appointed counsel filed a motion to withdraw stating Simmons never contacted her, so she could not adequately represent him at the trial on November 15, 2012. Before trial began, the court asked appointed counsel whether the defense was ready. She stated they were "ready to proceed" but reminded the court of the motion to withdraw. Counsel told the court that Simmons did not contact her "I believe, until two days ago. So that rather precludes me from being able to subpoena anybody on his

behalf." In response, the court stated:

> Okay. I appreciate that. I also recognize that you're an experienced attorney with years and years of practice under your belt; and I would also note that Mr. Simmons advised me at his arraignment that he was a Criminal Justice major at The University of Cincinnati, so I would assume Mr. Simmons is aware of what might be involved with getting ready for a trial and, uh, he's had several opportunities in this court over the years, and I appreciate that you've done that. We've got everybody here; it's a pretty straight-forward type of case with an assault, and, uh, I'll note your motion, but that motion will be denied, and we will proceed.  * * *

{¶23} It is clear that to the extent counsel might have been unprepared despite her affirmative statement to the contrary, Simmons himself invited that predicament by waiting until two days before trial to contact her. He should not expect to profit from his own act of indifference to the need for trial preparation.

{¶24} Moreover, when the court denied the motion to withdraw, it implicitly denied a continuance. *See State v. Dotson*, 4th Dist. No. 97CA9, 1998 WL 148327, *7 (Mar. 27, 1998) (finding counsel did not render deficient performance by failing to explicitly request a continuance because the court implicitly denied one when it denied the defendant's request to discharge his counsel, so an explicit request for a continuance would have been repetitive and futile). An explicit motion for a continuance would have been futile. *See id.* "The law does not require counsel to take a futile act," so appointed counsel's failure to make an explicit motion for a continuance was not deficient. *State v. Cottrell*, 4th Dist. Nos. 11CA3241 & 11CA3242, 2012-Ohio-4583, ¶ 20.

{¶25} Even if we found counsel deficient for not explicitly requesting a continuance to subpoena witnesses, Simmons cannot demonstrate prejudice. We can hardly expect counsel to proffer the testimony of unknown witnesses. And because no

one testified at trial aside from Simmons and the victim, the record necessarily contains no evidence about what testimony other witnesses would have actually given. Therefore we do not know whether they would have corroborated Simmons' story. His claim that a reasonable probability exists that the verdict might have been different if counsel requested a continuance to subpoena witnesses amounts to nothing more than speculation. And "[t]his type of vague speculation is insufficient to establish ineffective assistance of counsel." *State v. Rippy*, 10th Dist. No. 08AP-248, 2008-Ohio-6680, ¶ 14.

**{¶26}** In his argument for this assigned error, Simmons appears to suggest the court erred when it denied the motion to withdraw and did not grant a continuance. He complains the court used the fact that he was a "Criminal Justice major" and had former dealings with the court as reasons to deny the motion to withdraw when those issues "should have had nothing to do with the present case." (Appellant's Br. 8). In his reply brief, he argues that it "seems hardly fair" to use his criminal justice background "as a reason to refuse a continuance or for the attorney to withdraw * * *." (Reply Br. 1). He also complains that the court denied the motion to withdraw even though counsel filed it almost a week before trial and did not have a chance to subpoena witnesses. But because Simmons failed to assign as error the court's denial of the motion to withdraw and failure to grant a continuance, we will not address those issues. *See* App.R. 12.

**{¶27}** For the foregoing reasons, we overrule the second assignment of error.

### V. Summary

**{¶28}** Having overruled both assigned errors, we affirm the judgment below.

JUDGMENT AFFIRMED.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hillsboro Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hoover, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
       William H. Harsha, Judge




## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**