[Cite as *State v. Burke*, 2013-Ohio-2888.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 12CA39 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| MARK A. BURKE, | : | |
| | : | **RELEASED 6/27/13** |
| | | |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Eric E. Willison, Columbus, Ohio, for appellant.

Paul G. Bertram, III, Marietta City Law Director, and Daniel Everson, Marietta City Assistant Law Director, Marietta, Ohio, for appellee.

_____

Per Curiam

{¶1} Following a bench trial, the court found Mark Burke guilty of disobeying the instructions of a traffic control device while driving a vehicle. The court implicitly found Burke disobeyed the instructions for a stop sign because he failed to stop at a clearly marked stop line when he approached the sign. Burke contends his conviction is against the manifest weight of the evidence. We agree. The record contains no evidence there was a stop line at the location at issue. Even if there was a stop line, which Burke arguably appears to concede, there is no evidence about the location of his vehicle in relation to the line at any time. Thus, we reverse Burke's conviction. This decision renders his other arguments moot.

I. Facts

{¶2}   Burke pleaded not guilty to a charge of disobeying the instructions of a traffic control device, i.e., a stop sign, while driving a vehicle, in violation of R.C. 4511.12.  At a bench trial, Trooper Eric Knowlton with the Ohio State Highway Patrol testified that while on patrol in Washington County, he saw a vehicle stopped at a stop sign on Market Street and saw a second vehicle stopped behind the first vehicle.  As he approached the intersection, both vehicles "came out together and made a left turn."  In other words, the second vehicle did not come to a complete stop at the stop sign after the first vehicle proceeded into the intersection.  Burke was driving the second vehicle.

{¶3}   Burke testified that he stopped behind a truck at the stop sign.  He did not enter the intersection until the truck turned and exited the intersection.  Burke claimed he came to a separate, complete stop at the sign after the truck pulled out.  Burke explained:  "I hesitated while the truck started out of the intersection.  Then I was back from the white bar a little bit, after my hesitation stopped.  I was back from that white bar.  So what [the trooper] saw was me pulling up to that white bar and taking another look.  I'm already stopped.  I'm pulling up to the white bar, after I'm stopped, and the truck cleared the intersection, and I looked to the right and I looked to the left, and I said I have enough time to get out without causing an accident."

{¶4}   The court issued a decision and specifically found that "there is a stop line on Market Street."  The court found "beyond a reasonable doubt that [Burke] did fail to stop as required by [R.C.] 4511.12 before entering the intersection."  After sentencing, Burke filed this appeal.

## II.  Assignments of Error

{¶5}   Burke assigns the following errors for our review:

> I.    The Trial Court Erred When Convicting Defendant When There Was Uncontradicted Evidence that Defendant Did Stop at the Stop Sign.
>
> II.   The Trial Court Erred in Conducting an Ex Parte Investigation of the Scene.
>
> III.  The Trial Court Erred in Concluding that there was Evidence Beyond a Reasonable Doubt that Defendant Appellant Proceeded Without Stopping.

### III.  Manifest Weight of the Evidence

{¶6}   In his first assignment of error, Burke contends the court erred when it found him guilty because the evidence shows he did stop at the stop sign.  In his third assignment of error, Burke claims the court erred in concluding there was evidence beyond a reasonable doubt that he "proceeded without stopping."  We interpret these assignments of error as manifest weight of the evidence challenges and consider them together.

{¶7}   To determine whether a conviction is against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown*, 4th Dist. No. 09CA3, 2009-Ohio-5390, ¶ 24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).  A reviewing court "may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson*, 58 Ohio St.3d 40, 42, 567 N.E.2d 266 (1991).

{¶8}   We must remember the weight to be given evidence and credibility to be

afforded testimony are issues for the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d 1000 (1995). The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). We will only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice. "Unlike a manifest weight challenge to a conviction resulting from a jury verdict, which requires a unanimous concurrence of all three appellate judges to reverse, a manifest weight challenge to a conviction resulting from a bench trial requires only a majority concurrence to reverse." *State v. Hill*, 7th Dist. No. 09-MA-202, 2011-Ohio-6217, ¶ 49.

{¶9} Burke was charged with violating R.C. 4511.12(A), which provides that no driver of a vehicle "shall disobey the instructions of any traffic control device placed in accordance with [R.C. Chapter 4511], unless at the time otherwise directed by a police officer." Here, the device was a stop sign, and R.C. 4511.43(A) contains the instructions for it that the trial court concluded Burke did not follow. R.C. 4511.43(A) states:

> Except when directed to proceed by a law enforcement officer, every driver of a vehicle or trackless trolley approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of roadways.

{¶10} The trial court specifically found that "there is a stop line on Market Street" before it found Burke guilty. Therefore, we conclude the court implicitly found that

Burke disobeyed the instructions of a traffic control device, i.e., a stop sign, because he failed to stop at a clearly marked stop line when he approached the sign.

**{¶11}** The record contains no evidence there was a stop line. Although Burke mentioned a "white bar" during his testimony, he never clarified what this bar was. In his brief, Burke appears to acknowledge there was in fact a stop line. But as he points out, there is no evidence as to where the line was in relation to the stop sign, the vehicle in front of him, or his vehicle at any time during this incident. Knowlton only testified about the location of the vehicles in relation to the stop sign itself.

**{¶12}** The State concedes there was no testimony about the position of the stop line relative to the stop sign. (Appellee's Br. 5). The State suggests that "simple logic tells us that if indeed the Defendant was stopped *behind* the leading car (which was stopped at the red light), the Defendant could not have been stopped *at* the stop line as is required by statute, much less stopped at the point nearest the intersecting roadway if that stop line somehow did not exist." (Emphasis sic). (Appellee's Br. 5).

**{¶13}** The State mistakenly argues that the leading car stopped at a red light when evidence shows it was a stop sign. Moreover, we cannot simply assume that the first vehicle stopped at the *stop line* simply because Knowlton testified the vehicle stopped at the *stop sign.* Again, we have no evidence about the location of the stop line in relation to the stop sign or any of the vehicles.

**{¶14}** The State argues that Burke never raised the issue of the position of the stop line at the trial level, so he forfeited that issue for purposes of appeal. The State complains that "nobody ever claimed at the trial court level that this was anything but a properly marked stop sign with a corresponding stop line in the appropriate location,

with a driver ahead that had properly stopped at the intersection.  Had these matters been raised as objections to the charge, on point evidence could have (and would have) been taken."  (Appellee's Br. 5-6).  The State cites no authority for its argument.  The State had the burden to prove beyond a reasonable doubt that Burke disobeyed the instructions of a stop sign.  Burke did not forfeit his right to have the State prove that simply because he did not make a Crim.R. 29(A) motion for acquittal.  His not guilty plea preserved the right to appeal on the manifest weight and sufficiency of the evidence. *State v. Cooper*, 170 Ohio App.3d 418, 2007-Ohio-1186, 867 N.E.2d 493, ¶ 13 (4th Dist.) ("[A] defendant preserves his right to object to the alleged insufficiency of the evidence when he enters his 'not guilty' plea."); *Compare State v. Hill*, 8th Dist. No. 90513, 2008-Ohio-4857, ¶ 6 (stating that "[a] guilty plea waives a defendant's right to challenge sufficiency or manifest weight of the evidence.").

{¶15}  For the foregoing reasons, we find that Burke's conviction was against the manifest weight of the evidence.  We need not address Burke's other arguments as to why his conviction was against the manifest weight of the evidence.  They are moot. *See* App.R. 12(A)(1)(c).  Accordingly, we sustain the first and third assignments of error, reverse Burke's conviction, and remand so the court can discharge him.  This decision renders moot Burke's second assignment of error, so we need not address it.  *See id.*

JUDGMENT REVERSED AND
CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED. Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hoover, J.: Concur in Judgment and Opinion.
Harsha, J.: Dissents.

For the Court

BY: _____
     Peter B. Abele, Judge

BY: _____
     Marie Hoover, Judge

BY: _____
     William H. Harsha, Judge

### NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**