[Cite as *State v. Sizemore*, 2013-Ohio-3749.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 12CA3510 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| ANTHONY S. SIZEMORE, | : | |
| | : | **RELEASED: 08/22/13** |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

Christopher T. Travis, Stevensville, Michigan, for appellant.

Mark Kuhn, Scioto County Prosecuting Attorney, and Joseph L. Hale, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.
_____
Harsha, J.

{¶1}    Anthony Sizemore appeals his convictions for theft from an elderly person and burglary, arguing that the jury's verdict was against the manifest weight of the evidence.  Sizemore contends it was undisputed that he was previously invited into the victim's home, thus providing a legitimate reason for why his blood was found at the scene.  However, the victim testified that the blood was not there before the burglary and credibility is generally an issue for the trier of fact, so we reject this argument.

{¶2}    Sizemore also contends that law enforcement never recovered any of the stolen items and there were no eye witnesses to the crime.  However, the victim testified about the items taken from her home, including a drill and type of liverwurst. The victim's neighbor also testified that after the burglary Sizemore showed him a drill case and asked if he knew anyone who would want to purchase a drill.  Moreover, Sizemore was living with another of the victim's neighbors at the time of the offense and

after the burglary the victim identified liverwurst found in the neighbor's refrigerator as the same kind taken from her home.  Because the state presented credible evidence upon which the jury could have reasonably concluded that Sizemore committed the essential elements of the offenses, his convictions are not against the manifest weight of the evidence.  Accordingly, we affirm the trial court's judgment.

## I. FACTS

{¶3}    Sizemore was convicted of the burglary and theft of Gladys Love's home while she was out of town.  At the time of the offense, Sizemore and his girlfriend were living with his friend, Arnett Hogston.  Hogston was a long time neighbor to 78-year-old Love and regularly helped her with home improvement projects.  On the day in question, Sizemore accompanied Hogston to paint several rooms in Love's home.  A few hours after they arrived, Love received a phone call and requested that they leave because she had to visit her grandson.   Love returned the next morning to discover that her house had been burglarized and several items of her property were missing.

{¶4}    The state charged Sizemore with one count of burglary, in violation of R.C. 2911.12(A)(2) and (C), and one count of theft of an elderly person, in violation of R.C. 2913.01(A)(1) and (B)(3).  He pleaded not guilty and the matter proceeded to a jury trial.

{¶5}    At trial, the state alleged that Sizemore forced entry into Love's home through a bedroom window and took several items, including food, money and tools. The state also introduced evidence that two blood stains found on a bed sheet under the broken window matched Sizemore's DNA.  The jury found Sizemore guilty of both counts and after merging his convictions, the trial court imposed sentence.  This appeal followed.

## II. ASSIGNMENT OF ERROR

**{¶6}** Sizemore raises one assignment of error for our review:

1. THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT-DEFENDANT BY ENTERING A GUILTY FINDING UPON A VERDICT THAT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. LAW AND ANALYSIS

**{¶7}** To determine whether a conviction is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses to determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Drummond,* 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193.

**{¶8}** The reviewing court must bear in mind however, that credibility generally is an issue for the trier of fact to resolve. *See State v. Burke*, 4th Dist. Washington No. 12CA39, 2013-Ohio-2888, ¶ 8, citing *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d 1000 (1995). "'If the prosecution presented substantial evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence.'" *State v. Tyler*, 196 Ohio App.3d 443, 2011-Ohio-3937, 964 N.E.2d 12, ¶ 43 (4th Dist.), quoting *State v. Puckett*, 191 Ohio App.3d 747, 2010-Ohio-6597, 947 N.E.2d 730, ¶ 32 (4th Dist.). Thus, we will exercise our discretionary power to grant a new trial only in the exceptional case where the trier of fact clearly lost its way and the evidence weighs heavily against the conviction. *Drummond* at ¶ 193.

{¶9}   The jury convicted Sizemore of burglary in violation of R.C. 2911.12(A)(2) which states:

> No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

{¶10}  The jury also convicted him of theft from an elderly person or disabled adult in violation of R.C. 2913.02, which states in part:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * (1) Without the consent of the owner or person authorized to give consent [.]
>
> * * *
>
> (B)(3)  * * * [I]f the victim of the offense is an elderly person or disabled adult, a violation of this section is theft from an elderly person or disabled adult, and division (B)(3) of this section applies.  Except as otherwise provided in this division, theft from an elderly person or disabled adult is a felony of the fifth degree.

{¶11}  At trial, Hogston testified that at the time of the offense Sizemore was living with him and on the day in question he and Sizemore went to Love's house to paint several interior rooms.  Hogston had painted Love's bedroom several months before and they were not working in her bedroom on that day.  After painting for a few hours, Love received a telephone call and told them she had to leave to visit her grandson.  The men then cleaned up and left Love's home.  Hogston further testified that after the burglary he found Braunschweiger, a type of liverwurst, in his refrigerator. He had not purchased it and showed it to Love.  She identified it as the same type taken from her home.

{¶12} Love testified that she is 78 years of age and lives in the same neighborhood as Hogston. She had hired him to work in her home several times before and on the day in question he arrived with Sizemore to paint her bathroom and second bedroom. This was the first time Love had met Sizemore. While the men were painting, Love sat in the hallway so she could watch them work. She explained that she watched Sizemore because she did not know him and did not trust anyone she did not know in her home. She never saw Sizemore enter her bedroom. After they began painting, she received a call and told them they had to leave because she needed to visit her grandson in Waverly, Ohio. Love returned the next morning and discovered someone had burglarized her home.

{¶13} Love also testified that after examining her home, she discovered several items missing, including her VCR, a "weed eater," a drill, a clock, $25 in change, her purse and "a lot of food." She estimated that these items were worth in excess of $500. Love stated after the burglary she told Hogston that the offender even took her Braunschweiger from the refrigerator and explained to him what it was. About a week later Hogston brought over a small piece of Braunschweiger left in the package and told her he found it in his refrigerator. Love identified it as the same kind taken during the burglary. The window in Love's bedroom had also been broken and Love found blood stains on her bed sheets. She testified that the stains were not there before she left to visit her grandson.

{¶14} Deputy Paula Gibson testified that she received a call to respond to Love's home due to a reported burglary. When Deputy Gibson arrived she determined that the point of entry into the home was Love's bedroom window. There was broken glass on

the floor and pry marks on the window frame.  She also found bloodstains on the sheet and mattress pad of Love's bed, which were sent to the Ohio Bureau of Criminal Investigation for testing.  Deputy Gibson explained that because the bed was positioned under the window, the offender would have come in contact with the bed when entering the home.

{¶15}  Gary Howard, a neighbor of Love and Hogston, testified that his niece, Deanna Dawson, is Sizemore's girlfriend and he has known Sizemore for about three years.  On the night in question, Sizemore was throwing rocks at his window and asking to use the telephone, but he did not let him in the house.  The following morning Howard woke up and found Sizemore on the front porch.   Sizemore asked Howard if he knew "anybody that would buy a drill" and showed him a blue drill case, but never opened it. Howard stated that Sizemore also had a bandaged cut on his leg that he claimed "came from mowing grass."  Howard also testified that he has taken money from Love in the past and is currently incarcerated for an unrelated burglary conviction,  but was not indicted in this case.

{¶16}  Emily Draper, a DNA forensic scientist at the Ohio Bureau of Criminal Investigation, testified that she analyzed a sample of blood found on Love's bed sheet and compared it to Sizemore's DNA.  Her professional opinion was that the DNA on the sheet matched Sizemore's DNA.

{¶17}  Deanna Dawson, Sizemore's girlfriend, testified for the defense that her grandmother and Love were good friends and regularly got Braunschweiger from a local food pantry.  She explained that the Braunschweiger found in Hogston's refrigerator could have come from her grandmother because she often sent food over to Hogston.

Dawson further explained that Sizemore cut his leg doing electrical work prior to the burglary and he had the cut while he was painting Love's house with Hogston. She also denied that Sizemore ever had a cordless drill or offered to sell one to Howard.

{¶18} Sizemore denied that he was involved in the burglary of Love's home and testified that while he was helping Hogston paint Love's house, he went into her bedroom to inject heroin. He theorized that his blood could have gotten on her bed sheet at that time. He also stated that he cut his leg doing electrical work and the dressing needed to be changed two to three times a day due to continuous bleeding. He further testified that while he and Dawson were staying with Hogston, Dawson's grandmother would give them food and they would keep it at Hogston's house. He also denied ever having a cordless drill in a blue case.

{¶19} Sizemore argues that "the jury clearly lost its way" because it was undisputed that he was legitimately in Love's home helping Hogston paint before the crime and he explained at trial how his blood could have been found at the scene. However, as we have stated:

> It is the trier of fact's role to determine what evidence is the most credible and convincing. The fact finder is charged with the duty of choosing between two competing versions of events, both of which are plausible and have some factual support. Our role is simply to insure the decision is based upon reason and fact. We do not second guess a decision that has some basis in these two factors, even if we might see matters differently. *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31

Having heard the testimony and observed the demeanor of the witnesses, the jury may choose to believe all, part, or none of their testimony. *State v. Nguyen*, 4th Dist. Athens No.12CA14, 2013-Ohio-3170, ¶ 80. Here, the jury chose to believe Love's testimony regarding the blood on her bed sheet and we will not substitute our judgment for that of

the trier of fact under circumstances where the evidence reasonably supports the conclusion that Sizemore left his blood at the scene while committing the offense.

{¶20}  Sizemore also argues that law enforcement never recovered any of the stolen items, specifically the Braunschweiger and the drill, nor was there any "actual testimony of an actual witness to the burglary."  However, Love testified about the items taken from her home, including the drill and Braunschweigher, and Howard stated that he saw Sizemore with a drill case after the burglary.  And although Sizemore claims that Howard provided "the self serving testimony of an incarcerator burglar," as we have already explained credibility is generally an issue for the trier of fact.  Finally, Sizemore was living with Hogston at the time of the offense and Love testified that the Braunschweiger found in Hogston's refrigerator was the same kind taken from her home.

## IV. CONCLUSION

{¶21}  Based on the credible evidence presented by the state the jury could have reasonably concluded that Sizemore committed the essential elements of theft from an elderly person and burglary.  Accordingly, we cannot say that this is an exceptional case where the trier of fact clearly lost its way and the evidence weighs heavily against the conviction.  We overrule Sizemore's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing Scioto County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Hoover, J.: Concur in Judgment and Opinion.

For the Court

BY: _____
   William H. Harsha, Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**