DECISION AND JUDGMENT ENTRY
{¶ 1} Wayne R. Self appeals the judgment of the Ross County Court of Common Pleas finding him guilty of retaliation in violation of R.C. 2921.05
and sentencing him to an Ohio penal institution for a definite term of two years. Self argues that his conviction was against the manifest weight of the evidence because the jury ignored the psychological testimony he presented in support of his insanity defense. Because we find that the record contains evidence upon which a reasonable trier of fact could conclude that Self knew the wrongfulness of his conduct at the time of his offense, we conclude that the jury did not lose its way and create a manifest miscarriage of justice. Accordingly, we overrule Self's sole assignment of error and affirm the judgment of the trial court.
 I. {¶ 2} In January, 2001, Beavercreek Police Officer Sara Ball participated in the arrest of Self. During that arrest, Self assaulted Ball and two other officers. Thereafter, Self was charged and convicted of three counts of assault in violation of R.C. 2903.13(A), each count being a felony of the fourth degree. On June 7, 2001, the Green County Court of Common Pleas sentenced Self to five years of community control to include in-patient mental health treatment and intensive probation supervision.
 {¶ 3} In March 2002, Officer Ball received a letter in her work mailbox. She noticed that, while the return address indicated the sender was an FBI agent, there was a red stamp on the front of the envelope indicating that it was inmate correspondence from the Chillicothe Correctional Institute. Upon opening the envelope, Officer Ball discovered a handwritten letter informing her of an organized plot to exterminate her life. The writer also stated that he was capable of great inhumanity to others, that he hated the word "no", and that he understood people like John Wayne Gacy, Son of Sam, Jeffrey Dahmer, Jack the Ripper, and the Boston Strangler.
 {¶ 4} As Officer Ball read the last page of the letter, a phrase caught her attention because she heard Self utter it when she arrested him in 2001. Ball contacted officials at the Chillicothe Correctional Institute and learned that Self was an inmate at the time the letter was mailed. She logged the letter into evidence. Later, the investigators at the Ohio Bureau of Criminal Identification and Investigation discovered Self's fingerprints on the letter.
 {¶ 5} The grand jury indicted Self for one count of retaliation in violation of R.C. 2921.05, a felony of the third degree. Self pled not guilty by reason of insanity.
 {¶ 6} At trial, Self presented the testimony of David Malawista, a clinical psychologist. Malawista testified that, in his opinion, based upon his interview with Self, review of various documents including the letter at issue, and discussion with the psychology staff at the Lebanon Correctional Institute, Self suffers from paranoid schizophrenia. Further, Malawista testified that, based upon the content of the letter at issue, Self had the disease at the time he wrote the letter.
 {¶ 7} In response, the State presented the testimony of Dr. Earl Spencer Stump, a forensic psychologist. Dr. Stump testified that, in his opinion, Self may suffer from a personality disorder, but that the symptoms he exhibited during his interview did not rise to the level of a major illness like schizophrenia. Dr. Stump also concluded that Self did not suffer from paranoid schizophrenia at the time he wrote the letter, and that Self was able to distinguish right from wrong at that time.
 {¶ 8} The jury found Self guilty of retaliation. Thereafter, the trial court sentenced Self to two years of incarceration and ordered him to serve his sentence consecutive to the sentence he was already serving for a community control violation.
 {¶ 9} Self timely appeals raising the following assignment of error: "THE TRIAL VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 II. {¶ 10} In his sole assignment of error, Self argues that the jury verdict is against the manifest weight of the evidence because the jury lost its way when it disregarded the testimony of his psychological expert that Self suffers from paranoid schizophrenia.
 {¶ 11} R.C. 2901.01(14) provides that: "A person is `not guilty by reason of insanity' relative to a charge of an offense only if the person proves * * * that at the time of the commission of the offense, the person did not know, as a result of a severe mental disease or defect, the wrongfulness of the person's acts." The plea of not guilty by reason of insanity is an affirmative defense which the accused must prove by a preponderance of the evidence. See R.C. 2901.01(14) and R.C. 2901.05(A).
 {¶ 12} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted. State v. Garrow (1995),103 Ohio App.3d 368, 370-71; State v. Martin (1983),20 Ohio App.3d 172, 175. {¶ 13} "The weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of the facts." State v. Thomas (1982), 70 Ohio St.2d 79, syllabus. The trier of fact may reject an affirmative defense on the grounds of credibility. Id. If the record demonstrates that the jury has duly considered the insanity defense, a reviewing court should defer to the jury's interpretation of the evidence. See State v. Curry (1989),45 Ohio St.3d 109, 114.
 {¶ 14} Here, Self presented the testimony of Malawista, a clinical psychologist with thirty years of experience, who holds both an undergraduate and masters degree in psychology, and who completed all but a dissertation for a doctoral degree in psychology. At the time of his testimony, Malawista was employed by Shawnee Forensic Center, a State funded agency that provides psychological evaluations for purposes such as these. Malawista testified that he interviewed Self for three and a quarter to three and a half hours, discussed Self's treatment with the psychology staff at the Lebanon Correctional Institute, reviewed various records and a copy of the letter sent to Officer Ball. However, Malawista admitted that he did not review any medical charts in connection with his evaluation.
 {¶ 15} Malawista concluded that, in his professional opinion, Self suffers from paranoid schizophrenia, and was in a particularly florid period of his disease at the time he wrote the letter to Officer Ball. Malawista testified that the letter was a typical schizophrenic rambling letter, with fragmented, jumbled text. He also found Self's inability to adequately explain, during the course of his interview, what he was trying to communicate in the letter was characteristic of a person suffering from mental illness.
 {¶ 16} Upon cross-examination, Malawista conceded that it was not possible to get a clear picture of Self's affective states over the years. He also testified that, in his experience, it is more difficult for people with paranoid schizophrenia to maintain steady employment. Yet, he conceded that Self was able to maintain steady employment for over three years before his 2001 arrest. Additionally, Malawista admitted that there are certain psychological tests that could provide additional data in diagnosing paranoid schizophrenia, but that he did not perform any such tests.
 {¶ 17} The State's forensic psychologist, Dr. Stump, testified that he has over thirty years of experience, holds an undergraduate degree, a master's degree in corrections, and a Ph.D. in counseling. Dr. Stump testified that he began his career as a psychologist at the Ohio Penitentiary in 1967, and continued to work with prison populations until he retired in 1997 and began teaching graduate level counseling courses at Ohio University. Additionally, Dr. Stump provides counseling services at the Scioto Paint Valley Mental Health Center.
 {¶ 18} Dr. Stump testified that he spent approximately forty-five minutes interviewing Self, that he did not receive any materials before conducting his evaluation, and that he did not talk to any other psychological professionals who had seen Self. In the course of his interview, Dr. Stump found Self's thoughts and responses to his questions coherent and logically connected, although he believed Self added a lot of extraneous detail. While Dr. Stump testified that he saw some things that were "a bit unusual" in the course of his interview, he did not feel they rose to the level of schizophrenia. Dr. Stump opined that Self did not suffer from schizophrenia, either at the time of his interview or at the time he wrote the letter. He reasoned that schizophrenia is a chronic condition, and that if Self did not exhibit symptoms of the condition at the time of the interview, it probably did not exist one year earlier when Self wrote the letter. Dr. Stump also expressed his opinion that Self suffers from a personality disorder. He further testified that, even if Self suffered from the personality disorder at the time he wrote the letter, Self had the ability to distinguish right from wrong at that time.
 {¶ 19} On cross-examination, Dr. Stump reviewed the letter Self sent to Officer Ball. After reviewing the letter, Dr. Stump conceded that, if he had had the opportunity to review the letter before his interview, he would have asked Self different questions. Dr. Stump admitted that the letter looked like the writings of people who suffer from psychosis or paranoid schizophrenia. Dr. Stump also admitted, on cross-examination, that it was possible that he might have changed his opinion about Self's mental status if he reviewed it before his interview. Although, on re-direct, Dr. Stump stated that it is possible for someone to write a letter like Self wrote to Officer Ball and still understand that it is a wrongful act.
 {¶ 20} Self contends that the jury's verdict is against the manifest weight of the evidence because the jury could not reasonably rely upon the testimony of Dr. Stump. Specifically, Self argues that Dr. Stump is not credible because: (1) he spent less time with Self than Malawista; (2) he did not review any materials before conducting his evaluation; (3) he did not consult with other psychological professionals who had seen Self; (4) he admitted, after reviewing the letter in court, that the letter appeared to be like writings he had seen from schizophrenics; (5) he admitted that if he had reviewed more materials before his interview with Self, he might have reached a different conclusion about Self's mental status.
 {¶ 21} As we stated above, "[t]he weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of the facts." Thomas, supra. Here, both the defense and the prosecution presented substantial, probative evidence in the form of testimony from two qualified experts regarding Self's mental condition at the time of the offense. The trial court specifically instructed the jury that it could believe or disbelieve all or any part of the testimony of any witness. Therefore, the jury could decide what weight should be given to the testimony of each expert.
 {¶ 22} Self argues that Malawista's testimony is more credible than Dr. Stump's because he spent more time with Self, reviewed materials regarding Self's condition, including the letter, and consulted with other psychological professionals who had seen Self. Contrary to Self's assertions, the fact that one expert spent more time interviewing him and reviewed additional materials in making his diagnosis did not compel the jury to accept that diagnosis. See, State v. Bumgardner (Aug. 21, 1998), Greene App. No. 98CA103.
 {¶ 23} Self emphasizes the fact that Dr. Stump testified that he might have formed a different opinion about Self's condition if he had had the opportunity to review Self's letter to Officer Ball and question him about it during the course of his interview. However, the jury could have chosen to believe Dr. Stump's testimony that if Self suffered from paranoid schizophrenia, he would have exhibited some symptoms of the condition during his interview with Dr. Stump. Moreover, the jury could have chosen to discredit Malawista's diagnosis, which relied heavily upon the letter alone, given Dr. Stump's testimony that a person could write such a letter and still be capable of distinguishing right from wrong.
 {¶ 24} Given the conflicting evidence presented at trial, we find that the jury acted within its discretion when it chose to believe the testimony and expert opinion of Dr. Stump that Self was capable of distinguishing right from wrong at the time he wrote the letter to Officer Ball. Having carefully reviewed the record, we conclude that substantial evidence supports the jury's verdict and that the jury did not lose its way and create a manifest miscarriage of justice. Therefore, the jury's verdict is not against the manifest weight of the evidence. Accordingly, we overrule Self's sole assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.