[Cite as *State v. Kister*, 2014-Ohio-4596.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Case No. 13CA25 |
| v. | : | |
| | | DECISION AND |
| CHAD KISTER, | : | JUDGMENT ENTRY |
| Defendant-Appellant. | : | RELEASED |

10/10/2014

APPEARANCES:

Timothy Young, Ohio Public Defender, and Eric M. Hedrick, Assistant Ohio Public Defender, Columbus, Ohio, for Defendant-Appellant.

Patrick J. Lang, City of Athens Law Director, and Lisa A. Eliason, City of Athens Prosecutor, Athens, Ohio, for Plaintiff-Appellee.

Hoover, J.

{¶ 1} Defendant-appellant, Chad Kister ("Kister"), appeals his conviction in the Athens County Municipal Court for the offense of telecommunications harassment, a misdemeanor of the first degree, in violation of R.C. 2917.21(A)(4). For the following reasons, we reverse Kister's conviction.

{¶ 2} Kister has a long history of serious mental health issues. In the summer and fall of 2012, he was charged with two counts of telecommunications harassment under R.C. 2917.21 in two separate cases. In the case on appeal, Athens County Municipal Case No. 12CRB02178, he was charged with telephoning the Ohio Department of Mental Health on July 30, 2012, and threatening to "bomb the place." In Athens County

Municipal Case No. 12CRB02698, he was charged with making multiple phone calls to the Athens County Emergency Communications Center in August and September 2012 during which he screamed at the dispatchers, used curse words, and hung up. On the eve of the scheduled trial date, Kister waived the jury trial and entered a written plea of not guilty by reason of insanity ("NGRI") in both cases.

{¶ 3} The cases were tried together before the trial judge on April 25, 2013. On April 29, 2013, the trial court found Kister not guilty by reason of insanity in Case No. 12CRB02698 but guilty in Case No. 12CRB02178.[1] Kister was sentenced on May 13, 2013, in Case No. 12CRB02178 and this appeal followed.

{¶ 4} At the bench trial, witnesses for the State testified that Kister made three telephone calls to the Ohio Department of Mental Health ("ODMH") on the morning of July 30, 2012. The testimony indicated that Kister was incoherent, agitated, using profanity, and screaming during the calls. Kister also called the ODMH a terrorist organization and a Nazi organization and stated that the ODMH was "controlling him." During one of the calls, Kister identified himself by name and an ODMH employee believed that she heard him say he was going to "bomb the place, or I'll bomb this place." A partial recording of one of the calls was played at trial and admitted into evidence as State's Exhibit A. The recording did not contain the bomb threat statement, but an ODMH employee verified her voice on the tape and testified that the other voice on the tape was the same voice that later stated he would "bomb the place."

{¶ 5} Trooper Jack Moorehead of the Ohio State Highway Patrol testified that he was charged with investigating the bomb threat at the ODMH. He opened an

---

[1] While we are not privy to the journal entries filed in Case No. 12CRB02698, both Kister and the State agree that he was found NGRI in that case. [*See* Appellant's Brief at 1; Appellee's Brief at 1.]

investigation at 10:30 a.m. on the date of the incident after receiving witness statements from the ODMH employees. That afternoon, Trooper Moorehead, who had traced the telephone numbers to Kister and an address in Athens County, Ohio, contacted Kister by telephone. According to Trooper Moorehead, Kister denied making the telephone calls, but asked that charges be filed against the ODMH employees. Kister also asked Trooper Moorehead for his badge number, so that he could make a complaint against him.

{¶ 6} Dr. David Malawista was the sole expert witness to testify at trial.[2] Dr. Malawista is a clinical and forensic psychologist who has a long history of evaluating Kister. Dr. Malawista testified that he evaluated Kister six times in the year prior to the trial.[3] In addition to meeting with Kister, Dr. Malawista also listened to the testimony of the ODMH employees, the testimony of Trooper Moorehead, and reviewed Kister's medical records. Dr. Malawista diagnosed Kister as having paranoid schizophrenia, a severe mental disease that according to his expert testimony "affects one's ability to think clearly, rationally, [and to] organize one's thoughts." Dr. Malawista further indicated that Kister's "condition, his ability to filter is directly related to the level of his disturbance at one particular moment[,]" and that his ability to appreciate the wrongfulness of his actions "depends on the day and circumstance."

{¶ 7} Dr. Malawista further explained that people with paranoid schizophrenia "see the world quite differently than, than average people, people that do not have [the] condition." In regards to Kister, Dr. Malawista explained that:

---

[2] Both parties waived the right to have a written evaluation report filed with the trial court in addition to Dr. Malawista's testimony.

[3] At least some of those evaluations were conducted in the fall of 2012 to determine whether Kister was competent to stand trial and NGRI in a separate, unrelated case filed in the Athens County Common Pleas Court. At that time, Dr. Malawista determined that Kister was not competent to stand trial and he was placed in Appalachian Behavioral Health Care for 70 days until he was restored to competency. The case sub judice was stayed until Kister was restored to competency.

Kister believes that he is constantly being monitored by a wide range of governmental agencies. And this goes from local, from the sheriff's department or other local enforcement agencies, to national entities. The FBI, the CIA, the, uh, Homeland Security. * * * And he believes that they are tracking him constantly. They are monitoring his calls, they are breaking into his home and stealing things from his computer, that he believes that, um, various electronic devices have been implanted in his brain. The [sic] both monitor him and somewhat control him. That they listen in on what is going on, not only that he's verbally speaking but what he's thinking. * * * If you live in his shoes, you would understand how unhappy and how troubled he is. How angry he is. * * * Um, and my take on listening to the calls with, uh, the Department of Mental Health is that they are included in that list of entities that are tormenting him.

{¶ 8} When asked whether Kister's mental illness impaired his ability to understand the wrongfulness of the bomb threat to the ODMH employee, Dr. Malawista stated that: "Clearly, [he] did not believe what he was doing that day was wrong. He, he believed he was on a mission to try to resolve the torture that he was experiencing on a daily basis." And later Dr. Malawista clarified: "I don't think he did [appreciate the wrongfulness] at that moment, no." No testimony was ever submitted by the State to rebut or contradict Dr. Malawista's opinions.

{¶ 9} In its written decision filed April 29, 2013, the trial court found that Kister telephoned the ODMH on July 30, 2012, from his home in Athens County, Ohio, and threatened to bomb the office building. The trial court further found that "[Kister] has a

history of mental illness[,]" "has been diagnosed with Schizophrenia, Paranoid Type, a severe mental disease" and accepted Dr. Malawista's opinion that at the time of the bomb threat, Kister suffered from a severe mental disease. However, the trial court did not adopt Dr. Malawista's opinion that Kister did not appreciate the wrongfulness of his conduct in making the bomb threat to the ODMH. Rather, the trial court found that:

> While the Court has a great respect for Dr. Malawista's opinion, other testimony going to Defendant's recognition of wrongfulness must be considered.
>
> a.      When Investigator Morehead [sic] contacted Defendant approximately six      hours after the bomb threat, Defendant denied calling the ODMH.
>
> b.      When making the telephone calls to the ODMH, Defendant recorded the calls. He then placed an edited version of the calls on his      website. The editing deleted the threat language.
>
> From the above two facts, this Court finds that on July 30, 2012, Defendant recognized the legal wrongfulness of his threat.

{¶ 10} The trial court then concluded in its legal analysis that the elements of R.C. 2917.21(A)(4) had been proven beyond a reasonable doubt, and that Kister had not met his burden of proving insanity as an affirmative defense. Specifically, the trial court noted that Kister's knowledge of "the legal wrongfulness of his conduct in making the bomb threat is a recognition of wrongfulness, even if he individually disagreed with society's classification of such conduct as wrongful." Thus, the trial court determined that the NGRI defense was not applicable in this case.

{¶ 11} On appeal, Kister asserts the following assignments of error:

First Assignment of Error:

> The trial court abused its discretion and denied Mr. Kister a fair trial and due process of law when it found him guilty despite expert testimony that he was not sane at the time of the offending conduct, in violation of his Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution, and Sections 10 and 16, Article I of the Ohio Constitution. (Decision and Journal Entry, Apr. 29, 2013; Trial Tr. 133, 136, 143, 152).

Second Assignment of Error:

> Mr. Kister was denied his rights to due process and a fair trial when the trial court found him guilty of telephone harassment against the manifest weight of the evidence. Fifth and Fourteenth Amendments, United States Constitution; Article I, Section 16, Ohio Constitution. (Trial Tr. 11-17, 28-34, 127, 133, 136, 141, 152, 157; Decision and Journal Entry, Apr. 29, 2013).

{¶ 12} We address Kister's second assignment of error first because it is dispositive. In his second assignment of error, Kister contends that the trial court's guilty verdict is against the manifest weight of the evidence, given the testimony of Dr. Malawista, who opined that he was legally insane at the time he made the threatening statement. In essence, Kister does not contend that the State failed to prove the elements of the offense of telecommunications harassment. Rather, Kister argues that he established the elements of a NGRI defense and should have been found not guilty.

{¶ 13} A claim of insanity "is an affirmative defense that a defendant must prove by a preponderance of the evidence." *State v. Waller,* 4th Dist. Scioto No. 10CA3346, 2011-Ohio-2106, ¶ 9, citing *State v. Hancock,* 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 35. An accused is not guilty by reason of insanity if he or she can prove that at the time of the commission of the offense, the accused did not know, because of severe mental disease or defect, the wrongfulness of the accused's acts. R.C. 2901.01(A)(14); *Hancock* at ¶ 35.

{¶ 14} "When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses." *State v. Topping*, 4th Dist. Lawrence No. 11CA6, 2012-Ohio-5617, ¶ 60. "Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, when resolving the conflicts in evidence, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." (Quotations omitted.) *State v. Davis*, 4th Dist. Ross No. 12CA3336, 2013-Ohio-1504, ¶ 14. "A reviewing court should find a conviction against the manifest weight of the evidence only in the exceptional case in which the evidence weighs heavily against the conviction." (Quotations omitted.) *Id.* at ¶ 15.

{¶ 15} The reviewing court must bear in mind, however, that " '[t]he weight to be given the evidence and the credibility of the witnesses concerning the establishment of the defense of insanity in a criminal proceeding are primarily for the trier of the facts.' " *State v. Self*, 4th Dist. Ross No. 04CA2767, 2005-Ohio-1259, ¶ 13, quoting *State v. Thomas*, 70 Ohio St.2d 79, 434 N.E.2d 1356 (1982), syllabus. However, " '[u]nlike a manifest weight challenge to a conviction resulting from a jury verdict, which requires a unanimous concurrence of all three appellate judges to reverse, a manifest weight challenge to a conviction resulting from a bench trial requires only a majority concurrence to reverse.' " *State v. Burke*, 4th Dist. Washington No. 12CA39, 2013-Ohio-2888, ¶ 8, quoting *State v. Hill*, 7th Dist. Mahoning No. 09-MA-202, 2011-Ohio-6217, ¶ 49.

{¶ 16} Kister relies on *State v. Brown*, 5 Ohio St.3d 133, 449 N.E.2d 449 (1983), in which the Ohio Supreme Court affirmed an appellate court's reversal of a murder conviction as against the manifest weight of the evidence where the trial court ignored expert witness findings that the defendant was legally insane at the time he committed the murder. The *Brown* court held that a trial court errs in ignoring the conclusions of expert witnesses on the issue of insanity where there is no rebuttal testimony, lay or expert, indicating that the defendant was sane. *Id.* at 135. The *Brown* court also distinguished *Thomas*, supra, noting that the record in *Thomas* contained evidence that defendant was not insane at the time of the offenses, while the prosecution in *Brown* did not offer any rebuttal witnesses to defendant's case. *Id.* at 134.

{¶ 17} The State does not dispute the holding in *Brown*, but rather points to another finding in the opinion that states that the "expert's opinion, even if uncontradicted, is not conclusive[,]" so long as some reasons are "objectively present for ignoring [the] expert opinion testimony." (Quotations omitted.) *Id.* at 135. The State then argues that the trial court cited reasons for ignoring the expert's opinion including the fact that Kister denied making the threat to Trooper Moorehead and the fact that he placed only a portion of the conversation, the portion which did not include the threat, on his website.

{¶ 18} In reviewing the trial court's findings of fact, it is apparent that the trial court gave great weight and credibility to Dr. Malawista's testimony. For instance, the trial court expressly noted that it "accepts Dr. Malawista's opinion as establishing the element of Defendant having a severe mental disease at the time of threat." Moreover, the trial court apparently adopted Dr. Malawista's conclusion that Kister was legally insane

in Case No. 12CRB02698. However, while acknowledging Dr. Malawista's opinion that Kister did not appreciate the wrongfulness of his actions when making the bomb threat, the trial court ultimately found that Kister did understand that the threat was wrongful. In doing so, the trial court found Trooper Moorehead's testimony regarding Kister's denial persuasive, as well as the fact that the recording provided by Kister was allegedly edited to exclude the threat language.

{¶ 19} When we review the evidence in this case, we agree with the trial court that the expert testimony is indeed credible. We disagree, however, with the trial court's conclusion that Kister's denial of the threat to Trooper Moorehead was indicative of Kister's knowledge that the threat was at least legally wrong.

{¶ 20} First, Trooper Moorehead testified that he first contacted Kister approximately six hours after the incident. The issue in this case was whether Kister appreciated the wrongfulness of his actions *at the time of the commission of the offense*. It is entirely possible that while Kister may have appreciated the wrongfulness of his actions when he spoke to Trooper Moorehead, he may not have had the same appreciation six hours prior when the crime was committed. This scenario is bolstered by Dr. Malawista's testimony that Kister's ability to appreciate the wrongfulness of his actions "is directly related to the level of his disturbance at one particular moment."

{¶ 21} Second, Dr. Malawista testified that he listened to the testimony of the ODMH employees and Trooper Moorehead prior to taking the stand. Thus, Dr. Malawista was aware of the fact that Kister denied knowledge of the bomb threat to Trooper Moorehead. Despite this knowledge, Dr. Malawista still concluded that Kister did not appreciate the wrongfulness of his actions.

{¶ 22} Additionally, the trial court's assertion that Kister recorded the calls and then placed an edited version of the calls without the threat language on his website is not supported by witness testimony. Rather, such a finding could only be supported by the extraneous remarks made by the State's attorney. For instance, when the prosecutor introduced State's Exhibit A at trial, she stated: "Okay. All right. Now, I'm going to play for you a call. And this was, uh, provided to us in discovery. From the Defendant, Mr. Chad Kister. I'm going to play this for you and this has been, we're marking this as State's Exhibit A in this case." Later, when seeking admission of State's Exhibit A into evidence, the prosecutor remarked as follows: "We'd make a motion to admit our exhibit into evidence, which is the telephone conversation, the first half of it, and that came, uh, directly from Mr. Kister in discovery. And is on his website." Even later in trial, in trying to clarify whether Dr. Malawista had listened to recordings other than State's Exhibit A, the prosecutor stated that: "* * * [W]e only played a part of the call; that's all that's on his website. Did you hear the rest of the call in Mr. Jones' office?"

{¶ 23} After reviewing the record, we can find no witness testimony corroborating the trial court's finding that Kister not only recorded the calls, but that he also modified the calls and placed them on his website. The only statements that could possibly support such a finding are the above stated remarks of the prosecutor, which are not evidence.

{¶ 24} Here, the defense presented substantial, probative evidence in the form of expert testimony regarding Kister's mental condition at the time of the offense. The trial court gave substantial weight and credibility to certain portions of the expert's testimony, but not others. Moreover, the record evidence does not support the reasons the trial court

gave for deviating from the expert's conclusion that Kister did not appreciate the wrongfulness of the bomb threat. The State also did not present any evidence to rebut or discredit Dr. Malawista's testimony. In fact, the ODMH employees described Kister as incoherent, agitated, and irrational, which would seem to corroborate Dr. Malawista's testimony that Kister was legally insane when he made the threat.[4] In light of the foregoing, we conclude that Kister established by a preponderance of the evidence that he was insane at the time he made the threat. Thus, Kister's conviction was against the manifest weight of the evidence.

{¶ 25} Kister's second assignment of error is sustained. Our disposition of Kister's second assignment of error renders his first assignment of error moot. *See* App.R. 12(A)(1)(c). Accordingly, we reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.

JUDGMENT REVERSED AND
CAUSE REMANDED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE REVERSED and CAUSE REMANDED for further proceedings consistent with this opinion. Appellee shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.

---

[4] One employee even testified that they had never had anyone call the ODMH and "scream and screech" like Kister did the morning of the threat.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J.: Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment Only.

For the Court

By:_____

Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.