DECISION.
{¶ 1} Following a jury trial, defendant-appellant Rhonda Edwards was convicted of the murder of Sudon[1] McCollum and an accompanying gun specification. Edwards received an aggregate sentence of 18 years' to life imprisonment.
 {¶ 2} Edwards has appealed her conviction. For the following reasons, we affirm the judgment of the trial court.
 McCollum's Murder {¶ 3} On July 2, 2005, Edwards traveled to the Jet-In Market, located in Cincinnati's West End, to purchase cigars. After purchasing the cigars and leaving the store, Edwards walked towards McCollum's car, which had been parked in the Jet-In Market's lot. McCollum had been sitting inside his parked car. Edwards opened the front passenger door and sat in the car with McCollum. Shortly thereafter, she proceeded to shoot him multiple times, causing his death.
 Sufficiency and Weight of the Evidence {¶ 4} In her second and third assignments of error, Edwards attacks the sufficiency and the weight of the evidence supporting her conviction. In her fourth assignment of error, she argues that the trial court erred in denying her Crim.R. 29 motion for an acquittal. We address these arguments together.
 {¶ 5} When reviewing the denial of a Crim.R. 29 motion, this court employs the same standard of review used in reviewing a challenge to the sufficiency of the evidence.[2] We must determine "[w]hether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt."[3]
 {¶ 6} When reviewing a challenge to the manifest weight of the evidence, this court sits as a "thirteenth juror."[4]
We review the record, weigh the evidence, consider the credibility of witnesses, and determine whether the jury clearly lost its way and created a manifest miscarriage of justice.[5]
 {¶ 7} Edwards was indicted for murder under R.C. 2903.02(A). To support a conviction for murder, the state had to present evidence from which the jury could have found that Edwards had purposefully caused the death of McCollum.
 A. The State's Witnesses {¶ 8} The state presented the testimony of Ebony McCollum, the victim's cousin. Ebony McCollum testified that she saw Edwards get out of McCollum's car in the Jet-In Market's parking lot, put a gun in her pants, and walk away. The state corroborated Ebony McCollum's testimony with that of Robert Raysor. Raysor testified that he had been walking to the Jet-In Market on the day of the murder. He heard gunfire and saw Edwards walk away from McCollum's car with a gun. Both Raysor and Ebony McCollum recalled that Edwards had worn a white shirt and had dreadlocks on the day of the murder.
 {¶ 9} Officer Melissa Cummins testified that she arrived near the murder scene within a minute of receiving a dispatch about the shooting. Upon her arrival, a witness informed her of Edwards' attire and of the direction that she had been walking. Officer Cummins stopped and handcuffed Edwards approximately one block away from the Jet-In Market.
 {¶ 10} Officer Matt Martin testified that he responded to a dispatch regarding the shooting and began looking for the weapon that had been used. After being informed by a bystander that Edwards had placed the gun in a mailbox, Officer Martin began searching mailboxes and found the weapon.
 {¶ 11} Officer Deon Mack testified that, upon his arrival outside the Jet-In Market, he heard music coming from McCollum's car. Officer Mack found McCollum inside the car. He had been shot multiple times and was sitting with his hands crossed and his head in his lap.
 {¶ 12} Criminalist Edward Carpenter examined McCollum's automobile. He testified that McCollum's car radio was playing loudly, and that inside the car were three nine-millimeter Winchester Luger casings that had been ejected from the murder weapon upon firing. Carpenter also found a bullet lodged in the driver's door of the automobile.
 {¶ 13} In addition to examining the automobile, Carpenter retrieved the murder weapon from the mailbox in which it had been found. Carpenter identified the weapon as an Interarm Firestar nine-millimeter pistol containing three live rounds. Carpenter noted that the serial number on the pistol was 2001927. When assisting in the search of Edwards' apartment, Carpenter found, underneath a bed, a gun box for an Interarm pistol containing a serial number matching that of the pistol retrieved from the mailbox. Carpenter also found a box of Winchester cartridges underneath the mattress, as well as a nine-millimeter magazine inside a box on a computer desk. These cartridges and magazine were compatible with the pistol.
 {¶ 14} The state additionally presented the testimony of Firearms Examiner William Schrand, Forensic Analyst Matt Wyatt, and Criminalist Joan Burke. Schrand had examined the bullets found in McCollum's body during the autopsy and testified that, with the exception of one bullet lacking sufficient markings to be identified, the bullets had been fired from the Interarm pistol. Wyatt testified that he had examined an adhesive strip swabbed from Edwards' hand, and that the strip tested positive for gunshot residue. Criminalist Burke testified that she had obtained a Deoxyribonucleic Acid ("DNA") profile from a swab from the Interarm pistol taken by Criminalist Carpenter. The profile she obtained was a mixed sample from more than one person. But Burke testified from the DNA that Edwards was included in the group of people who had handled the gun.
 {¶ 15} Detective David Landesberg interviewed Edwards following her arrest, and he testified that Edwards had informed him that McCollum had raped her on May 15, 2005, and that she had entered McCollum's car to confront him about the rape. Edwards told Detective Landesberg that she did not remember shooting McCollum, but that she thought that she had left her gun in his car.
 {¶ 16} Russell Uptegrove, a forensic pathologist, testified regarding the autopsy he had conducted on McCollum. McCollum suffered from multiple gunshot wounds, although he died instantaneously from a bullet that severed his brain stem. Uptegrove testified that McCollum's wounds were consistent with bullets fired from a distance of at least 18 to 24 inches.
 B. Edwards Testifies {¶ 17} Edwards testified on her own behalf, revealing that she and McCollum had known each other since they were children. She also explained several events in her life that had occurred shortly before the shooting. In April of 2005, Edwards was injured when the ceiling in her home collapsed. In May of 2005, her father passed away, leaving Edwards severely depressed. Several weeks after her father's death, Edwards' alleged, she was raped by McCollum. She told no one about the rape, although it greatly traumatized her.
 {¶ 18} Edwards testified that, on the day McCollum was shot, she had gone to the Jet-In Market to purchase cigars. Upon leaving the market, she heard McCollum's laugh, the same laugh she had heard the night she was raped. Edwards entered McCollum's car to confront him about the rape. She asked him to stay away from her and told him that she would be leaving town. But McCollum grabbed her hand and stated, "I'll be there to get you and your girl tonight." According to Edwards, after that statement, the next thing she remembered was being stopped by the police. Edwards admitted to carrying a gun since the rape, but she repeatedly denied shooting McCollum.
 C. Analysis {¶ 19} Our review of the record leads us to conclude that the state presented sufficient evidence that Edwards had murdered McCollum. The jury could reasonably have inferred a purpose to kill based upon Edwards' voluntary entry into McCollum's automobile and her repeated shooting of him. The state presented ample evidence placing Edwards in McCollum's car and demonstrating her connection to the murder weapon.
 {¶ 20} But Edwards argues that because of the extreme emotional distress she had suffered following the rape, she was unable to form the purpose to kill. The jury was entitled to weigh Edwards' credibility and determine what weight to give her testimony. Contradicting Edwards' allegation that she heard McCollum laughing was Officer Mack's and Criminalist Carpenter's testimony that McCollum's car radio had been playing loudly. And Edwards stated that she had told no one about the rape before revealing it after McCollum's shooting. Considering the evidence presented, we cannot conclude that the jury lost its way in determining that Edwards had purposefully killed McCollum.
 {¶ 21} Accordingly, we conclude that Edwards' conviction was supported by sufficient evidence and was not against the manifest weight of the evidence, and that the trial court did not err in denying her Crim.R. 29 motion for an acquittal. We overrule Edwards' second, third, and fourth assignments of error.
 Voluntary-Manslaughter Jury Instruction {¶ 22} In her first assignment of error, Edwards argues that the trial court erred in failing to give the jurors an instruction on voluntary manslaughter.
 {¶ 23} Voluntary manslaughter is defined in R.C. 2903.03: "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *."[6]
 {¶ 24} Voluntary manslaughter is not a lesser-included offense of murder, but rather is an inferior degree of murder.[7] Nonetheless, when determining whether an instruction on voluntary manslaughter should have been given, we apply the same test utilized when determining whether an instruction on a lesser-included offense should have been given.[8]
 {¶ 25} An instruction on voluntary manslaughter is appropriate when "the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter."[9]
 {¶ 26} The trial court should have given an instruction on voluntary manslaughter if the evidence presented at trial demonstrated that Edwards had killed McCollum while under the influence of a sudden passion or fit of rage caused by provocation from McCollum that was serious enough to incite her into using deadly force. Following our review of the record, we conclude that the trial court properly declined to give such an instruction.
 {¶ 27} Edwards testified that she had been emotionally traumatized since being raped by McCollum. But the alleged rape had occurred approximately six to seven weeks before the shooting. Edwards had sufficient time to cool off between the rape and McCollum's murder, and was not under a sudden passion caused by the rape.[10]
 {¶ 28} Edwards also testified that, while she was in his automobile, McCollum had grabbed her hand and stated, "I'll be there to get you and your girl tonight." But neither the grabbing of her hand nor McCollum's statement constituted serious provocation that would have incited the use of deadly force.
 {¶ 29} We further note that Edwards repeatedly denied killing McCollum throughout her testimony: "I didn't kill Sudaun"; "No, ma'am, I never pulled the trigger"; "Yes, ma'am, I'm saying I did not shoot him"; "I didn't murder anyone, ma'am"; and "I left Sudaun alive, I know I did."
 {¶ 30} It was disingenuous for McCollum to request a jury instruction stating that she had killed McCollum while under the influence of a sudden passion, when she had repeatedly denied killing him during her testimony. Edwards argues that her trial counsel admitted during closing argument that Edwards had shot McCollum. But closing argument is not evidence; it is, by its terms, argument. Counsel's statement during closing argument did not negate Edwards' trial testimony.
 {¶ 31} Edwards next argues that the persuasiveness of the evidence supporting a voluntary-manslaughter instruction was irrelevant, and that, in essence, all she had to do was present some evidence of the offense. Edwards is incorrect. As we have stated, an instruction on voluntary manslaughter is only warranted when "sufficient evidence is presented which would allow a jury to reasonably reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense."[11]
 {¶ 32} While Edwards did present some evidence supporting a voluntary-manslaughter instruction, we conclude that the jurors were not presented with sufficient evidence to allow them to reasonably acquit Edwards of murder and to find her guilty of voluntary manslaughter. Accordingly, Edwards' first assignment of error is overruled.
 Testifying Officer's Expression of Belief of Guilt {¶ 33} In her fifth assignment of error, Edwards argues that the trial court erred in allowing Detective Landesberg to express his opinion that Edwards was guilty. Specifically, Edwards finds error in Detective Landesberg's statements that "[b]y the time of her interview there was overwhelming evidence that she had committed this crime," "[t]here is no justification for what occurred, what happened to Sudaun McCollum," and "I'm very convinced that Rhonda Edwards knows exactly what she did that night."
 {¶ 34} Edwards failed to object to any of these statements. Accordingly, we review for plain error.[12] Plain error is only present when, but for the error, the outcome of the trial would have been different.[13]
 {¶ 35} Detective Landesberg's statements were inadmissible under Evid.R. 701. Evid.R. 701 limits the testimony of lay witnesses to "those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."[14] Several of Detective Landesberg's statements were not based on his own perceptions, but rather were based on information he had received from other people.[15]
And the statements were subjective expressions of Detective Landesberg's opinion that did not explain, or help the jurors to understand, his testimony.
 {¶ 36} Nonetheless, no plain error resulted from the admission of these statements. The state presented substantial evidence of guilt, and these few statements by Detective Landesberg did not affect the outcome of the trial. Accordingly, we overrule Edwards' fifth assignment of error and affirm the judgment of the trial court.
Judgment affirmed.
Sundermann, P.J., and Winkler, J., concur.
Ralph Winkler, retired, from the First Appellate District, sitting by assignment.
[1] McCollum's first name also appears as "Sudaun" throughout the record.
[2] See State v. Jordan, 1st Dist. No. C-040897,2006-Ohio-2759, ¶ 49.
[3] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[4] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[5] Id.
[6] R.C. 2903.03(A).
[7] State v. Tyler (1990), 50 Ohio St.3d 24, 36,553 N.E.2d 576.
[8] State v. Shane (1992), 63 Ohio St.3d 630, 632,590 N.E.2d 272, citing State v. Tyler (1990), 50 Ohio St.3d 24, 37,553 N.E.2d 576.
[9] Id.
[10] See State v. Huertas (1990), 51 Ohio St.3d 22, 32,553 N.E.2d 1058.
[11] State v. Shane, supra, 63 Ohio St.3d at 632-633.
[12] State v. Johnson, 88 Ohio St.3d 95, 110, 2000-Ohio-276,723 N.E.2d 1054.
[13] See State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph two of the syllabus.
[14] Evid.R. 701.
[15] See State v. Webb, 70 Ohio St.3d 325, 333,1994-Ohio-425, 638 N.E.2d 1023.