[Cite as *State v. Andre*, 2015-Ohio-17.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101023**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**WILLIAM ANDRE**

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-571897-A

**BEFORE:** E.A. Gallagher, J., Boyle, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** January 8, 2015

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square, Suite 1616
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Paul Gregory
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, J.:

{¶1} Defendant William Andre appeals his conviction for felonious assault in violation of R.C. 2903.11(A)(2). Finding merit to his appeal, we reverse and vacate the conviction.

{¶2} Andre's conviction arose out of a February 22, 2013 incident in which he allegedly struck Rosemary Candow with his vehicle as she was walking through the parking lot of a Giant Eagle grocery store. On February 25, 2013, Andre was indicted by the Cuyahoga County Grand Jury on one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony. The indictment alleged that on February 22, 2013, Andre "did knowingly cause or attempt to cause physical harm to Rosemary R. Candow by means of a deadly weapon or dangerous ordnance, to wit: automobile." Andre waived his right to a jury trial, and on December 18, 2013, the case proceeded to a bench trial.

{¶3} The state's witnesses, which included Candow and two police officers — Detective Brian Berardi and Investigator Gennaro Romanello with the Lakewood Police Department — provided the following account of the incident and subsequent investigation that led to Andre's arrest and conviction.

{¶4} Candow testified that at approximately 9:30 p.m. on February 22, 2013, she and her son went to the Giant Eagle grocery store in Lakewood, Ohio. A few minutes later, after making their purchases, they exited the store and began to walk through the parking lot to their car. Candow testified that as they were walking through the parking lot, a car parked in a reserved, handicapped space started backing out, nearly hitting them. Candow testified, "I yelled. I yelled to stop," but that "[h]e didn't. He kept coming." She testified that she moved her son out of the way, "getting him behind me," and then hit the back of the vehicle with her hand to alert the driver of their presence because it did not appear that he heard her yelling. Candow testified that after she hit the back of the car, the vehicle stopped and she looked over at

the vehicle. She testified that the vehicle's windows were up and tinted such that she could not see the driver or any other occupants but that, as she approached, the driver appeared to make some kind of gesture with his arm. Candow testified that she said to the driver, "Are you freaking kidding me[;]you almost hit us," then turned around and continued walking to her car, which was parked several spaces away from Andre's vehicle.

{¶5} Candow claimed that she was at the back of her vehicle when she heard a "quick acceleration" of an engine — i.e., "the car being floored," like "the acceleration if you were to punch your foot on the gas of a car" — and saw Andre's vehicle coming towards them "pointed" at her son. She testified that she put her hands out to stop the vehicle but that the corner passenger side of the vehicle struck her right knee, spinning her "kind of off the side of the car." She testified that as she was falling, she became caught on the passenger-side mirror and that she grabbed the mirror with her other hand as the vehicle was dragging her. She testified that she got free, fell down on her right side and moved her arm out of the way as the car drove "right by" her head. Candow did not recall stepping back from her vehicle before it hit her but acknowledged that the video shows that she "stepped away" from her vehicle before coming into contact with Andre's vehicle.

{¶6} Candow testified that after she was struck by the vehicle, she heard her son screaming and "jumped up." She testified that she looked up and obtained the license plate number of the vehicle that had hit her. She testified that she provided that number to an off-duty Lakewood police officer who was working security inside the Giant Eagle store at the time the incident occurred. Later that night, Candow was taken to the Lakewood Hospital Emergency Department where she was treated and released. According to Candow, she had preexisting knee problems that were exacerbated by her fall and she now suffers from emotional

problems related to the incident as well. Candow's son, who was loading groceries into their vehicle when his mother was struck, was not injured in the incident.

{¶7} Detective Brian Berardi, the off-duty Lakewood police officer working security inside the Giant Eagle that evening, testified that at approximately 9:20 p.m., a male entered the store, approached him and told him that his help was needed outside because someone had been struck by a car in the parking lot. Detective Berardi testified that he went outside and found Candow, who told him that she had just been hit by a vehicle that was backing up. Detective Berardi testified that Candow identified the space in which the vehicle that had hit her had been originally parked — one of the first handicapped spots in the lot — and that he observed a motorized shopping cart directly next to the parking space. Detective Berardi testified that he recalled seeing the man who was using the motorized shopping cart — the only motorized shopping cart in use at the time — when the man was shopping inside the store. Detective Berardi further testified that he was able to ascertain the identity of the man by reviewing the store's security tapes, checking the receipts of the register at which the man had checked out and gleaning the customer's identity through the Giant Eagle card he had used during checkout.

{¶8} Detective Berardi testified that after speaking with Candow, he radioed dispatch and an on-duty police officer arrived at the scene a few minutes later. Detective Berardi testified that he relayed the information he had obtained from Candow and the name of the man who had been using the motorized shopping cart to the responding officer, then went back inside as the responding officer took over the on-scene investigation.

{¶9} Detective Berardi testified that the following day, when he was back on duty with the Lakewood Police Department, he did some follow-up investigation regarding the incident. He testified that he was able to obtain and review the security camera footage of the outside of

the Giant Eagle from that evening. That footage was later admitted into evidence as state's exhibit No. 1.

{¶10} At trial, Detective Berardi testified regarding his interpretation of the events depicted in the surveillance video. He testified that although the parking lane of the Giant Eagle parking lot was wide enough that a car could safely maneuver through the middle of the lane without having to cross into any of the parking spots, it appeared to him that "the car went way over into the parking lines where the parking lines are for the parked cars and just about struck [Candow's] vehicle." Detective Berardi further testified that based on his training and eight years of experience as an accident investigator with the Lakewood Police Department, it appeared to him that Andre's actions were "intentional" and "not * * * a motor vehicle accident." Andre did not object to this testimony.

{¶11} On cross-examination, Detective Berardi acknowledged that the video shows that Candow made it to the back of her vehicle before she was allegedly struck by Andre's vehicle. Detective Berardi further acknowledged, based on the video, that after Candow reached her vehicle, she took a couple of steps to her right, approximately three feet away from her vehicle and into the path of the vehicle driven by Andre. Detective Berardi testified that, although he had not "pa[id] attention" to the vehicle's brake lights during his prior viewings of the video, the video shows that Andre applied his brakes "on and off intermittently" as he approached the area where Candow's vehicle was parked. He testified that it appeared from the video that Andre's vehicle "went right towards her and struck her" and that in his opinion, "from the very beginning when he backed out, [Andre] was aiming the car right directly toward her" — or at least "in her direction" — and that "he only changed direction after she had fallen." Detective

Berardi agreed, however, that there was "no sudden jerking towards Mrs. Candow" and that Andre "made only one smooth arc" as he was pulling away.

{¶12} With respect to what caused the contact between Candow and Andre's vehicle, Detective Berardi testified that he "couldn't tell" from the video whether Andre's vehicle struck Candow or whether Candow grabbed the car's passenger-side mirror.

{¶13} Detective Berardi testified that after reviewing the surveillance video, he obtained a warrant for Andre's arrest and that he and several other officers thereafter arrested Andre at his home. Detective Berardi testified that when they arrived at Andre's home, he observed the vehicle seen in the surveillance video parked in Andre's driveway. With respect to the condition of the vehicle, Detective Berardi testified that "the passenger side mirror was folded against the side door glass, so the mirror was completely folded in. There were marks on the hood and along the front right corner and along the side of where the dirt was wiped clean as if something brushed it off."

{¶14} Gennaro Romanello, a "uniformed investigator" with the Lakewood Police Department who responded to the call from dispatch regarding the incident, was the final witness for the state. Investigator Romanello testified that when he arrived on the scene, Detective Berardi filled him in on what he had learned. He took a statement from Candow, photographed the scene and then returned to police headquarters where he obtained an address for the identified vehicle. Investigator Romanello testified that later that evening, he and another officer went to the address he obtained for the vehicle, i.e., Andre's home, observed the vehicle in the driveway and spoke with Andre regarding the incident. He testified that Andre admitted upon questioning that he had been driving the vehicle at the Giant Eagle that evening. Investigator Romanello further testified that Andre said that he did not think he had hit anyone but that, if he

did, he was sorry. Andre acknowledged to Investigator Romanello that he had been "upset" after Candow hit his car but that he did not do anything in response; "he just left." After taking a statement from Andre, Investigator Romanello photographed the vehicle. He noted that the vehicle had a collapsed passenger-side mirror and swipe marks on the front and side of the vehicle beneath the mirror, consistent with what Candow had described to him. Investigator Romanello told Andre that he had to investigate the matter further and would get back to him.

{¶15} Investigator Romanello testified that prior to trial, he had viewed the surveillance video once in Detective Berardi's office. After viewing the video a second time on cross-examination, Investigator Romanello acknowledged that the video shows that Candow stepped "a foot or 2" away from her vehicle and into the path of Andre's vehicle as Andre's vehicle was headed towards her and that she was about "two feet away from the back of her car" when she came into contact with Andre's vehicle. Investigator Romanello also acknowledged that illuminated brake lights could be seen on the back of Andre's vehicle and agreed that, in his experience as an investigator, someone who hits the brakes is not generally "flooring a car."

{¶16} At the close of the state's case, Andre moved for acquittal pursuant to Crim.R. 29. The motion was denied by the trial court. No witnesses testified in Andre's defense.

{¶17} The trial court found Andre guilty of felonious assault as charged. At the sentencing hearing, the trial court stated that it was going to sentence Andre to home detention for one year and would further order that his driver's license be suspended for two years, that his driver's license not be reinstated unless and until he completed both a driver intervention program and anger management class and that he pay restitution for various medical expenses incurred by Candow. In its January 21, 2014 journal entry of the sentencing hearing, however, the trial court sentenced Andre to two years of community control sanctions and one year of

home detention, suspended his driver's license for two years and ordered that Andre pay $4,111.98 in restitution to Candow.

{¶18}  Andre appealed his convictions, raising three assignments of error:

FIRST ASSIGNMENT OF ERROR
The state failed to present sufficient evidence of the offense charged.

SECOND ASSIGNMENT OF ERROR
Appellant's conviction is against the manifest weight of the evidence.

THIRD ASSIGNMENT OF ERROR
The trial court erred in allowing the state's witness to opine regarding the appellant's guilt, in violation of the Ohio Rules of Evidence and in violation of the right to a fair trial and in violation of the due process clause of the Fourteenth Amendment of the United States Constitution.

**Opinion Testimony**

{¶19} For ease of discussion, we address Andre's third assignment of error first.   In his third assignment of error, Andre argues that the trial court improperly permitted Detective Berardi to testify regarding his opinion that Andre's actions were "intentional, not an accident." Andre contends that this testimony was "extremely prejudicial and usurped the roll [sic] of the trier of fact."   He also contends that the testimony was "unnecessary" because it was "not beyond the ordinary fact finder's understanding" and the trial court was "capable of forming a competent conclusion absent the opinion."   Andre maintains that due to its "obvious" "prejudicial effect," admission of the improper opinion testimony constitutes reversible error.

{¶20}  "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus.   An appellate court, therefore, generally reviews a trial court's decision pertaining to the admission of evidence for an abuse of discretion.   *State v. Gale,* 8th Dist. Cuyahoga No. 94872, 2011-Ohio-1236, ¶ 12, citing *State v. Finnerty*, 45 Ohio St.3d 104,

107, 543 N.E.2d 1233 (1989). An abuse of discretion means more than a mere error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶21}** In this case, however, Andre did not object at trial to Detective Berardi's testimony that Andre's actions appeared to be intentional. As such, he has waived all but plain error. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 119, citing *State v. Childs,* 14 Ohio St.2d 56, 236 N.E.2d 545 (1965), paragraph three of the syllabus. "Plain error does not exist unless, but for the error, the outcome of the trial would have been different." *State v. Joseph,* 73 Ohio St.3d 450, 455, 653 N.E.2d 285 (1995), citing *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990).

**{¶22}** Andre contends Detective Berardi's opinion testimony was improperly admitted because he (1) was not an expert witness qualified to offer an expert opinion under Evid.R. 702 and (2) did not offer a proper opinion of a lay witness under Evid.R. 701. The state maintains that it did not attempt to qualify Detective Berardi as an expert under Evid.R. 702 but merely sought to have him testify as to his lay opinion under Evid.R. 701. Although the state elicited testimony from Detective Berardi that he was an accident investigator for eight years prior to becoming a detective and had received training in accident investigation, this testimony appears to have been elicited in an attempt to establish that Detective Berardi's opinion was based on his personal knowledge and experience and would therefore be helpful to the trier of fact, not for purposes of qualifying him to testify as an expert witness. Consequently, we need not address Andre's argument that Detective Berardi's testimony was inadmissible under Evid.R. 702 and will consider only whether Detective Berardi's opinion that Andre's actions were intentional was properly admitted under Evid.R. 701 as opinion testimony by a lay witness.

**{¶23}** Evid.R. 701 governs the admissibility of lay opinion testimony. Evid.R. 701 provides:

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue.

**{¶24}** In addition, Evid.R. 704 provides:

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact.

**{¶25}** Evid.R. 701 requires that any opinion offered by a lay witness be rationally based on first-hand perceptions by the witness. *State v. Hall*, 2d Dist. Montgomery No. 19671, 2004-Ohio-663, ¶ 8. If a lay witness's opinion is not "rationally based on the perception of the witness," then "'the opinion is speculation, and as such, cannot be "helpful to a * * * determination of a fact in issue."'" *State v. Cornish*, 12th Dist. Butler No. CA2014-02-054, 2014-Ohio-4279, ¶ 24, quoting *State v. Feerer*, 12th Dist. Warren No. CA2008-05-064, 2008-Ohio-6766, ¶ 23, quoting *Hall* at ¶ 8. Detective Berardi investigated the incident after the fact; he did not witness it. His opinion that Andre's actions were intentional was based on his after-the-fact investigation and review of the video. As such, Detective Berardi's testimony failed to satisfy the requirement that his opinion be "rationally based on [his] perception." *See, e.g., State v. Edwards,* 1st Dist. Hamilton No. C-050883, 2006-Ohio-5596, ¶ 33-36 (Detective's statements opining on defendant's guilt were inadmissible under Evid.R. 701 where they were based, not on his own perceptions, but rather on information he had received from other people and were "subjective expressions of * * * opinion" that did not explain or help the jurors to

understand his testimony; however, there was no plain error where admission of the statements did not affect the outcome of the trial).

{¶26} Moreover, this is not a case in which the officer's opinion would have been "helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue." In this case, the trial court was capable of viewing the video and drawing its own conclusion as to whether Andre knowingly caused or attempted to cause physical harm to Candow.

{¶27} Furthermore, this was a bench trial. In a bench trial, the trial court is presumed to consider only reliable, relevant and competent evidence in rendering its decision unless it affirmatively appears to the contrary. *State v. White,* 15 Ohio St.2d 146,151, 239 N.E.2d 65 (1968); *Cornish*, 2014-Ohio-4279 at ¶ 30; *see also State v. Haney*, 7th Dist. Mahoning No. 05 MA 151, 2006-Ohio-4687, ¶ 41-43 (admission of police officer's improper lay witness opinion under Evid.R. 701 did not constitute reversible error where the trial was a bench trial, the trial court is presumed to rely only on relevant and competent evidence and there was no evidence the trial court relied on the improper evidence in reaching its verdict). No such evidence exists in this case.

{¶28} Even assuming the trial court improperly allowed Detective Berardi to testify regarding his opinion that Andre acted intentionally, we find no plain error. There is nothing in the record that suggests that Detective Berardi's improper opinion testimony affected the outcome of the trial. The trial court viewed the video many times during the course of the trial and was capable of deciding for itself whether Andre committed the offense at issue with the requisite mens rea. Accordingly, we overrule Andre's third assignment of error.

**Sufficiency of the Evidence**

**{¶29}** In his first assignment of error, Andre argues that there was insufficient evidence to support his conviction. A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 52. When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *Jenks* at paragraph two of the syllabus.

**{¶30}** R.C. 2903.11(A)(2) provides in relevant part:

> No person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance.

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2901.22(A).

{¶31} Andre contends that the state failed to present sufficient evidence to prove beyond a reasonable doubt that (1) he knowingly caused or attempted to cause physical harm with his vehicle and (2) the vehicle was a deadly weapon. Following a thorough review of the record, we find that the evidence presented by the state, when viewed in the light most favorable to the prosecution, was sufficient to support Andre's conviction for felonious assault.

{¶32} Andre first argues that because the surveillance video shows (and the two police officers admitted) that (1) Candow stepped away from her vehicle and into the path of Andre's vehicle and (2) Andre applied his brakes intermittently as he was leaving the parking lot, the evidence "did not support the conclusion that [Andre] possessed the requisite mens rea to be convicted of felonious assault" and that, therefore, there was insufficient evidence to support his conviction. We disagree.

{¶33} Neither the officers' testimony nor the surveillance video precluded a finding of mens rea based on sufficiency of the evidence. When considering a challenge to the sufficiency of the evidence, we review the evidence admitted at trial to determine "whether such evidence, *if believed*, would convince the average mind of the defendant's guilt beyond a reasonable doubt." (Emphasis added.) *Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus, 574 N.E.2d 492.

{¶34} Candow's testimony, if believed, was sufficient in and of itself to establish mens rea, i.e., that Andre knowingly caused or attempted to cause physical harm to Candow with his vehicle. Candow's testimony regarding their initial encounter established that Andre was aware of her presence and location in the parking lot as he was pulling out of his parking space. Candow testified that as she reached the back of her vehicle, she heard the engine of Andre's vehicle quickly accelerate, i.e., that Andre "floor[ed] the car," directly towards and her son. She

further testified that she put out her hands in an attempt to stop the approaching vehicle but that Andre struck her with his vehicle, causing her to fall to the ground and suffer various physical and emotional injuries. Andre's contention that the surveillance video (and the officers' testimony regarding what that video shows) contradicts Candow's version of events goes to credibility and the weight to be given the evidence, not the sufficiency of the evidence.

{¶35} Andre also argues that there was insufficient evidence of mens rea because the state failed to present any evidence explaining why Andre, "a complete stranger," would ever attempt to harm Candow. Although we do not believe such evidence was required to survive a sufficiency challenge under the facts and circumstances of this case, the state presented evidence that after Candow hit Andre's car with her hand, Andre made some kind of gesture with his arm, which Candow interpreted as "flipping me off." In addition, Investigator Romanello testified that when he spoke with Andre regarding the incident, Andre admitted being "upset" after Candow banged on his car.

{¶36} Andre also contends that his conviction should be overturned on sufficiency grounds because the state "failed to present any evidence that the automobile in this case was capable of causing death." Once again, we disagree.

{¶37} It is well-established that a vehicle, "when used in a manner likely to produce death or great bodily harm, can be classified as a 'deadly weapon' under R.C. 2923.11." *State v. Sternbach*, 8th Dist. Cuyahoga No. 100653, 2014-Ohio-4203, ¶ 24, citing *State v. Tate*, 8th Dist. Cuyahoga No. 87008, 2006-Ohio-3722, ¶ 23, citing *State v. Troyer*, 8th Dist. Cuyahoga No. 61983, 1993 Ohio App. LEXIS 1791 (Apr. 1, 1993); *see also State v. Dupuis*, 6th Dist. Lucas No. L-12-1035, 2013-Ohio-2128, ¶ 61 ("In Ohio, a vehicle, such as a car or minivan, is recognized as a 'deadly weapon' as set forth in R.C. 2901.22."), citing *State v. Griffith*, 8th Dist.

Cuyahoga No. 97366, 2013-Ohio-256, ¶ 13. It is a matter of common sense that aiming a vehicle in the direction of persons in a parking lot and quickly accelerating that vehicle towards those persons is likely to result in someone being seriously injured or killed. Candow's testimony that Andre aimed his vehicle directly at her and quickly accelerated, striking her, was therefore sufficient to prove beyond a reasonable doubt that Andre used his vehicle as a deadly weapon. Accordingly, Andre's first assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶38} In his second assignment of error, Andre argues that his felonious assault conviction was against the manifest weight of the evidence because there was no "competent credible evidence that he knowingly did anything with criminal culpability."

{¶39} In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial. *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence.

{¶40} When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "'thirteenth juror'" and may disagree "with the factfinder's resolution of conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of

fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus. "'Unlike a manifest weight challenge to a conviction resulting from a jury verdict, which requires a unanimous concurrence of all three appellate judges to reverse, a manifest weight challenge to a conviction resulting from a bench trial requires only a majority concurrence to reverse.'" *State v. Burke*, 4th Dist. Washington No. 12CA39, 2013-Ohio-2888, ¶ 8, quoting *State v. Hill*, 7th Dist. Mahoning No. 09-MA-202, 2011-Ohio-6217, ¶ 49; *see also State v. Gilkerson,* 1 Ohio St.2d 103, 104, 205 N.E.2d 13 (1965). Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin, supra*. We believe this is such a case.

{¶41} Andre's manifest weight challenge is based on the same arguments as his challenge to the sufficiency of the evidence. Andre maintains that he pulled out of his parking space and attempted to drive away when Candow — still angry about their initial encounter — walked into the path of his vehicle and grabbed his passenger-side mirror, causing herself to fall. He contends that the surveillance video "tip[s] the scales in his favor" and that the weight of the evidence, i.e., the greater amount of credible evidence, fails to support the trial court's determination that Andre *knowingly* caused or attempted to cause physical harm to Candow beyond a reasonable doubt.

**{¶42}** While we recognize that it is primarily for the trier of fact to assess credibility and to weigh the evidence, we agree with Andre that the evidence in this case — in particular, the surveillance videotape — requires an interpretation of the events that differs from that testified to by Candow and proffered by the state.

**{¶43}** Although Candow claims that Andre aimed his vehicle in her direction, "floored the gas" and then drove his vehicle into her, the surveillance video tells a different story. The video shows that after her initial altercation with Andre, Candow had made it to the rear driver's side of her vehicle before Andre's vehicle allegedly came into contact with her. The video further shows that after Candow made it back to her vehicle, she then took several steps (a distance of two or three feet) away from her vehicle and into the path of Andre's vehicle as he was pulling out of the parking lot. Although Candow testified that she did not recall stepping back from her vehicle, even she acknowledged on cross-examination that the video shows that she stepped away from her vehicle and into the path of Andre's vehicle as she saw the vehicle approaching. The video shows "no sudden jerking" towards Candow or other change in the vehicle's trajectory after Candow moved away from her vehicle (as presumably would have been necessary if Andre had been aiming the vehicle at her). Instead, as Detective Berardi testified, the video shows that the vehicle "made only one smooth arc" as it was pulling away. Had Candow not stepped away from her vehicle and into the path of Andre's vehicle — an act that there is no evidence to suggest Andre anticipated — the vehicle presumably would not have made contact with Candow. Nor does the video support Candow's claim that Andre "floored the gas" as he was approaching Candow's location prior to striking her. Rather, the video shows the vehicle proceeding at a steady, even pace as it pulls out of the parking lot.

**{¶44}** The video also shows the illumination of the vehicle's brake lights and that Andre periodically hit the vehicle's brakes as he backed out of the parking space and headed out the parking lot — facts that are inconsistent with Andre knowingly causing or attempting to cause physical harm to Candow with his vehicle. Thus, the surveillance video persuasively undermines the state's claim that Andre aimed his vehicle at Candow and knowingly caused or attempted to cause physical harm to Candow with his vehicle.

**{¶45}** The events at issue occurred in a matter of seconds. Although we agree that Andre was driving very close to Candow and her son and in the exercise of caution should have avoided doing so, our review of the record — and the surveillance video, in particular — leaves us with considerable doubt that Andre knowingly caused or attempted to cause physical harm to Candow with his vehicle.

**{¶46}** Based on our review of the entire record in this case, weighing the strength and credibility of the evidence presented and the inferences to be reasonably drawn therefrom, the majority of this panel finds that the evidence weighs heavily against Andre's felonious assault conviction. We find that competent, credible evidence was lacking as to the mens rea element of the offense — i.e., that Andre *knowingly* caused or attempted to cause physical harm to Candow beyond a reasonable doubt — and that the trial court, therefore, lost its way in convicting Andre of felonious assault. As such, we reverse Andre's conviction as being against the manifest weight of the evidence. Andre's second assignment of error is sustained.

**{¶47}** For the foregoing reasons, Andre's conviction is hereby reversed, his sentence is vacated, and the case is remanded to the trial court for a new trial.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for further proceedings consistent with this opinion.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

PATRICIA A. BLACKMON, J., CONCURS;
MARY J. BOYLE, P.J., DISSENTS

MARY J. BOYLE, P.J., DISSENTING:

{¶48} I respectfully dissent. I agree that the state presented sufficient evidence to convict Andre of felonious assault beyond a reasonable doubt and, thus, I would overrule Andre's first assignment of error. I would also overrule Andre's third assignment of error regarding Detective Berardi's opinion as to the cause of the accident, but for different reasons than those offered by the majority. Finally, I would overrule Andre's second assignment of error regarding manifest weight of the evidence because it is my view that this is not the "exceptional case in which the evidence weighs heavily against the conviction."

*Opinion Testimony*

{¶49} In analyzing Andre's third assignment of error, the majority only focuses on whether Detective Berardi's opinion testimony — that Andre's actions appeared to be "intentional, not an accident" — was properly admitted under Evid.R. 701 as lay opinion testimony. The majority does this because the state maintains on appeal that it offered

Detective Berardi's opinion testimony not as expert testimony, "but as lay opinion testimony under Evid.R. 701." But it is my view that regardless of what the state is claiming, Detective Berardi's opinion was offered as an expert opinion based on his eight years as an accident investigator. Thus, I would analyze Andre's third assignment of error addressing both issues, namely, whether Detective Berardi's opinion was properly admitted as lay opinion testimony or expert opinion testimony.

{¶50} The majority concludes that Detective Berardi's opinion was not properly admitted under Evid.R. 701 as lay opinion testimony because Detective Berardi did not witness the incident first hand. The majority goes on to find no plain error and overrules Andre's third assignment of error. I agree with this analysis. But as I stated, it is my view that Detective Berardi's opinion was admitted as an expert opinion even though the state did not formerly offer or qualify Detective Berardi as an expert witness and, thus, I would go on to address this issue.

{¶51} Evid.R. 702(B) addresses the qualifications necessary to accord a witness "expert" status. Under the rule, a witness may qualify as an expert by reason of his or her "specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." Evid.R. 702(B). Neither special education nor certification is necessary to confer expert status upon a witness. *See State v. Boston*, 46 Ohio St.3d 108, 119, 545 N.E.2d 1220 (1989). The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier-of-fact in performing its fact-finding function. *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 116, citing State v. Hartman, 93 Ohio St.3d 274, 285, 754 N.E.2d 1150 (2001). Pursuant to Evid.R. 104(A), the trial court determines whether an individual qualifies as an expert, and that

determination will be overturned only for an abuse of discretion. *State v. Williams*, 4 Ohio St.3d 53, 58, 446 N.E.2d 444 (1983).

{¶52} In this case, Detective Berardi testified that he had been a police officer for 21 years and a detective for six years. He explained that he had taken "numerous classes" after his basic training, including "evidence collection, accident investigation, [and] crime scene investigation throughout [his] whole career." He further stated that he was a uniformed accident investigator for the city of Lakewood for eight years prior to becoming a detective. Before becoming an accident investigator, he obtained specialized training at "regular accident investigator schools, and [he] also attended advance crash investigations." Thus, although the state did not formerly offer or qualify Detective Berardi as an expert witness, I would find no plain error because the trial court could have properly concluded that Detective Berardi was qualified as an expert witness. *See State v. Overstreet*, 8th Dist. Cuyahoga No. 55328, 1989 Ohio App. LEXIS 2525 (June 22, 1989) (no error because although the trial court did not find the accident investigator to be an expert, the record showed that it could have).

{¶53} Having determined that Detective Berardi gave an "expert opinion" as to an ultimate issue in this case, I would turn to the threshold question presented here, i.e., whether Detective Berardi's expert opinion was "otherwise admissible" under Evid.R. 704. To determine this question, one must decide whether the trier of fact was competent to decide the issue for itself or whether it needed the assistance of an expert to determine the issue. If the trier of fact was competent, then expert opinion testimony to the ultimate issue was improper. If the trier of fact was not competent, meaning it needed the expert's opinion to assist it in determining what occurred, then expert testimony was not proper. *See* 1980 Staff Notes to Evid.R. 704; *Shepherd*, 152 Ohio St. 6, 87 N.E.2d 156, paragraph two of the syllabus.

{¶54} On this issue, I agree with the majority (although it was deciding it for purposes of lay opinion testimony) that "the trial court was capable of viewing the video and drawing its own conclusion as to whether Andre knowingly caused or attempted to cause physical harm to Candow." Thus, I would find that the trial court improperly permitted Detective Berardi to give his opinion as a lay witness or an expert witness. I nonetheless agree with the majority that no plain error occurred here. I agree that Detective Berardi's opinion did not affect the outcome of the trial, especially in light of the fact that this was a bench trial. Thus, I would overrule Andre's third assignment of error. *Manifest Weight of the Evidence*

{¶55} I disagree with the majority that this is the "exceptional case in which the evidence weighs heavily against the conviction." Although we sit as the "thirteenth juror," this court could not see Candow's demeanor as she testified, nor could we hear her testimony. As Andre and the majority point out, the video shows that Candow does appear to leave the area near the back of her car, where she would have been safe, and step into the lane of traffic as Andre's vehicle approached. But the video also shows that before Andre veered away from Candow, he came dangerously close to the back of Candow's vehicle (applying his breaks intermittently or not) — with Candow and her son standing right beside it (even the majority recognizes that "in the exercise of caution," he should have avoided doing so). That video further shows that Andre appeared to aim his vehicle directly at Candow and her son before he veered away. Andre's vehicle then came in contact with Candow as he started veering away, causing Candow to fall. And Andre did this just after Candow had hit the back of his car with her hand, making him so angry (a fact he admitted to Officer Romanello) that he made some kind of gesture at her with his arm.

**{¶56}** Thus, it is my view that the video is simply not that clear as to what actually occurred and it certainly does not provide exculpatory evidence. Indeed, the fact that two judges on this panel and two other judges (one at the trial court and one at the appellate court — myself) disagree as to what the video does and does not show, supports the conclusion that this is not that "exceptional case."

**{¶57}** Further, it is significant that only one of the four judges actually heard the testimony of all of the witnesses, including the victim. It is also significant that this one judge was the actual factfinder at trial, not merely presiding over the case. Because of this and in light of the fact that the video does not "persuasively undermine" the state's evidence (as the majority finds), I cannot agree with the majority that the factfinder — the trial court judge — "clearly lost its way" in convicting Andre of felonious assault.

**{¶58}** Accordingly, I would overrule Andre's second assignment of error and affirm the judgment of the trial court.